THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. EDWARD G. GLENNON, Appellant.

1. EVIDENCE — ACTS OF THIRD PERSONS — COMPETENCY. On the trial of a patrolman indicted for neglect of duty in failing to repress a house of prostitution, proof of the conduct of the inmates of the house and of acts done while the defendant was not present is admissible as tending to show that the defendant, who was instructed to watch the house, must have seen them, or that if he failed to do so, it was because he purposely refrained from observing them.

2. TRIAL — REQUESTED INSTRUCTION TO ACQUIT — REFUSAL. The refusal to instruct the jury at the close of the evidence to acquit the defendant is not erroneous where there is evidence tending to show that he knew of the nature of the place and purposely refrained from interfering with it.

3. EVIDENCE — TELEPHONE MESSAGE — COMPETENCY. Evidence that a telephone message concerning a proposed raid on the place was sent to the defendant at his request is competent, although he was not present when the message was received, where he admitted that he heard of it and it appears that he paid the sender of the message for his services.

4. APPEAL — ERRONEOUS EVIDENCE — STRIKING OUT. The admission of incompetent evidence does not constitute available error where it was subsequently stricken out.

5. NON-PREJUDICIAL EVIDENCE. The erroneous admission of evidence cannot be complained of when not prejudicial.

6. EVIDENCE — RULES OF POLICE DEPARTMENT ADMISSIBLE. On the trial of a patrolman for neglect of duty the authorized rules of the police department are admissible in evidence.

7. PREVIOUS ACT. Testimony concerning a raid on a house of ill-fame, at a date previous to the times mentioned in the indictment charging the defendant with willful neglect of duty in failing to suppress the place, is inadmissible where. he is not shown to have had any knowledge or information of the occurrence.

8. WITNESSES — BIAS — MOTIVE. The refusal to allow a witness on a criminal trial to be asked whether his bail had not been increased by the district attorney, is erroneous where it is sought thereby to affect his credibility and show bias and motive, in that he was testifying under duress so as to save himself.

9. TRIAL — POWER OF OFFICER — REVERSIBLE ERROR. The refusal of a requested instruction that the officer would not be justified in making an arrest upon no other evidence than the reputation of the house, nor upon evidence insufficient to secure a conviction, and the failure of the court to define, in reply to a question of the jury, the powers of the officer in that regard, constitute reversible error.

*People* v. *Glennon*, 78 App. Div. 271, reversed.

(Argued March 5, 1903; decided April. 28, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 20, 1903, which affirmed a judgment of the Court of General Sessions of the county of New York, entered upon a verdict convicting the defendant of the crime of willful neglect of duty as a public officer.

The facts, so far as material, are stated in the opinion.

*Judson S. Landon, Abram I. Elkus, Joseph M. Proskauer* and *Ira Leo Bamberger* for appellant. It was error of law to. refuse to ·dismiss the indictment at the close of the People's

case. (*People* v. *Ledwin*, 153 N. Y. 10 ; *Matter of M. H. Bank*, 153 N. Y. 199 ; *Townsend* v. *Little*, 109 U. S. 504.) The trial court erred in rulings upon the admission of evidence. (*People* v. *Fielding*, 148 N. Y. 542 ; *People* v. *Molineux*, 168 N. Y. 265 ; *People* v. *Sharpe*, 107 N. Y. 247 ; *People* v. *Shea*, 147 N. Y. 78 ; *People* v. *Chrystie*, 65 Hun, 439 ; Whart. Cr. Ev. [9th ed.] § 477 ; *Ives* v. *Ellis*, 169 N. Y. 85 ; *People* v. *Greenwald*, 108 N. Y. 296 ; *Morris* v. *A. A. R. R. Co.*, 116 N. Y. 522.) The trial court erred in its charge and in its refusals to charge. (*Snead* v. *Bonnoil*, 166 N. Y. 325.)

*William Travers Jerome, District Attorney* (*Howard S. Gans* of counsel), for respondent. The evidence establishes the crime charged in the indictment. (Penal Code, § 718, subd. 1 ; *People ex rel.* v. *Roosevelt*, 16 App. Div. 369 ; 155 N. Y. 662 ; *Weiss* v. *Herlihy*, 23 App. Div. 608, 612 ; *People* v. *Herlihy*, 66 App. Div. 534 ; 170 N. Y. 584 ; *People* v. *Brooks*, 1 Den. 457 ; *People* v. *Calhoun*, 3 Wend. 421 ; *Gardner* v. *People*, 62 N. Y. 299 ; *State* v. *Baldwin*, 39 Texas, 115 ; *Hopewell* v. *State*, 22 Ind. App. 489 ; *State* v. *Hatch*, 116 N. C. 1003 ; *Morris* v. *People*, 3 Den. 381.) The evidence against the defendant was not rendered insufficient by reason of the sources from which it came. (*People* v. *Brooks*, 131 N. Y. 321 ; *Matter of Cross*, 85 Hun, 357 ; *People ex rel.* v. *Police Comrs.*, 84 Hun, 64.) It was the defendant's duty, under the law, to detect offenders as well as to arrest them, and his willful blindness and inertness constitute no defense. (*People ex rel.* v. *Roosevelt*, 155 N. Y. 662 ; Whart. Crim. Law, § 1582 ; *Cowley* v. *People*, 83 N. Y. 468 ; *Shattuck* v. *State*, 51 Miss. 575, 584 ; *Com.* v. *Coyle*, 160 Penn. St. 36 ; *King* v. *Bembridge*, 3 Doug. 327 ; *King* v. *Holland*, 5 T. R. 607.) The evidence of the acts done by Whitney, Sheils and Dwyer in pursuance of the criminal confederation entered into by them with the defendant to protect the house of prostitution in question, was competent. (*People* v. *Weissenberger*, 73 App. Div. 433 ; *People* v. *McKane*, 143 N. Y. 455, 470 ; *Kelly* v. *People*, 55 N. Y. 365 ; *Peo-*

*ple* v. *O'Neil,* 109 N. Y. 251; *Sinclair* v. *U. S.,* 164 U. S. 134, 149; *People* v. *Krivitsky,* 168 N. Y. 186.) The exclusion of the question as to the increase of the bail of the witness Whitney does not constitute reversible error. (Whart. Cr. Ev. [9th ed.] 153; *People* v. *Brooks,* 131 N. Y. 321.) The proof that the witness Cox had been seen in conversation with the keeper of the house of prostitution, and that he had been seen to receive money from her, was competent. (*People* v. *Brooks,* 131 N. Y. 321; *People* v. *Webster,* 139 N. Y. 73; *Garnsey* v. *Rhodes,* 138 N. Y. 461, 467; *Zimmer* v. *T. A. R. R. Co.,* 36 App. Div. 271; *Gumpy* v. *M. R. R. Co.,* 65 App. Div. 38, 42; *Schultz* v. *T. A. R. R. Co.,* 89 App. Div. 242.) No error was committed in the rulings on the admission of evidence. (Code Cr. Pro. § 542; *Gaffney* v. *People,* 50 N. Y. 417, 423; *Romertze* v. *Bank,* 49 N. Y. 577; 1 Greenl. on Ev. § 463.) The court's charge was fair to the defendant. (*King* v. *People,* 83 N. Y. 587; *Barnesciotto* v. *People,* 10 Hun, 137; *Gardner* v. *People,* 62 N. Y. 299; *People* v. *Calhoun,* 3 Wend. 421; *People* v. *Brooks,* 1 Den. 457; *Matter of Pickett,* 55 How. Pr. 591; *State* v. *Baldwin,* 39 Tex. 115; *Hopewell* v. *State,* 32 Ind. App. 489; *State* v. *Hatch,* 116 N. C. 1003; *People* v. *Diamond,* 72 App. Div. 284; *Krauskoff* v. *Tallman,* 38 App. Div. 273.) There was no error in the refusals to charge. (*People* v. *Murray,* 76 App. Div. 119; *People* v. *Herlihy,* 66 App. Div. 534; 170 N. Y. 584; *People* v. *Weissenberger,* 73 App. Div. 433.)

Cullen, J. The appellant, a patrolman of the police force of the city of New York, was indicted and convicted for neglect of duty in failing to restrain and repress a house of prostitution kept by one Laura Maurat at No. 148 West 33rd street in said city, and in failing to arrest the persons keeping and maintaining the same. The house was situated in the precinct to which the appellant was attached. Though not technically a detective, the duties which he was assigned to perform were of a similar character to those of a detective,

he being what is known as·a "plain clothes man;" that is
to say, he did not wear his uniform or anything to call
attention to his position while on his rounds.   The attention
of the captain of the precinct had been called to the char-
acter of the house mentioned by complaints of various per-
sons and by notice from his superiors, and the appellant,
with certain other officers, was instructed by the captain to
watch the house, ascertain its character and, if it proved to be
a disorderly house, to break it up and arrest the persons main-
taining it.   It was conclusively proved by men who visited
the place that it was a house of prostitution.   Some of these
witnesses were officers or agents of the Society for the Pre-
vention of Crime.   They seem to have had no difficulty
whatever in obtaining access to the house.   The place had
been maintained as a house of prostitution for over two years,
when it was closed and the proprietor and inmates were
arrested on a warrant issued·on the complaint of such officers.
A number of the neighbors testified that during this period
women, inmates of the house, either from the windows or
from the stoop, frequently and constantly solicited men pass-
ing by.   Men in numbers visited the house.   The peace and
order of the neighborhood were disturbed by the noise of sing-
ing and musical instruments and by the flagrant misconduct
of the house's occupants.   Without going into further details,
it is sufficient to say that if the testimony of these witnesses
was credited it was impossible for a passer-by to mistake the
nature and character of the house.   On the other hand, the
defendant testified that he carefully watched the house and
noticed no signs of disorderly or immoral conduct on the
part of its inmates; that he endeavored to obtain entrance
to it several times, but was refused, and that he saw
nothing that justified his either arresting the occupants
or making a complaint.   In this he was corroborated by
the testimony of other policemen and some of the neighbors.
Whitney, a discharged agent of the Society for the Prevention
of Crime, testified that he had a conversation with the defend-
ant about the character of the house; that the defendant said

4

that it had been there for some time, and he did not want to break it up unless it was necessary to do so, and asked him (Whitney) as to the probable action of the society. He also requested Whitney to give him notice of any anticipated raid on the house by telephoning simply its street number to the station house. In pursuance of this conversation, but only to test the conduct of the appellant, Whitney telephoned to the station house. The defendant was not there at the time, but subsequently met Whitney and gave him a hundred dollars for sending the notice. The defendant denied the whole of Whitney's statement. The defendant, having been convicted, was sentenced to imprisonment for the term of six months. His conviction was affirmed by the Appellate Division, and from the judgment of that court this appeal is taken.

Numerous exceptions to the admission of evidence were taken on the trial, some of which it is necessary to notice in detail. It is contended that proof of the conduct of the inmates of the house and acts done while the defendant was not proved to have been present was not competent evidence against him. We think the testimony admissible on two grounds. The foundation of the charge against the defendant was that the place was a house of prostitution. This was the first fact that it was necessary for the prosecution to establish. The evidence was clearly competent for this purpose, but its effect was not by any means limited to that fact alone. The defendant was detailed to watch the house. It is true he testified that he witnessed no immoral or disorderly acts, but the jury was not bound to believe his statement. While a single occurrence or even several occurrences transpiring when the defendant was not shown to be present would not be sufficient to prove that he must have observed the character of the house or to charge him with neglect of duty; still the acts and behavior of the inmates, and the scenes which occurred at the house might have been so numerous, so constant, and might have extended over so long a period of time that the jury would have been justified in finding, as a matter of fact, either that the defendant had actually wit-

nessed some of them, or that if he had failed to do so it was because he had purposely and willfully refrained from observing them. If, in addition to this, the jury credited the story of Whitney, the evidence was ample to show that the defendant had known the character of the house and had willfully refrained from interfering with it. These views also dispose of the objection that the court erred in refusing, at the close of the evidence, to instruct the jury to acquit the appellant.

Evidence of the occurrence when Whitney telephoned to the station house as to a proposed raid on the premises 148 West 33rd street, though the defendant was not at the station house at the time, was rendered competent by the subsequent admission of the latter that he had heard of it and by his payment of money to Whitney for his services. The testimony of Whitney as to his conversations with the defendant concerning pool rooms was incompetent because it had no bearing on the case, but, having been subsequently stricken out, constituted no error. Several communications and reports from the captain of the precinct, the inspector and others were admitted in evidence. These were not competent except the letter of the officer from the Society for the Prevention of Crime, which was shown to the defendant at the time he was set at work for the suppression of the house and gave him notice of its character. The error, however, was harmless. There was nothing in these papers prejudicial to the defendant. The rules of the police department were properly received. The head of the department is authorized to make rules for its government, and the intentional violation of those rules would tend to establish a willful neglect of duty.

The evidence that Captain Chapman raided the house and drove out its inmates was incompetent. This occurred before the times mentioned in the indictment, during which it is charged the defendant willfully neglected his duty, and he was not shown to have had any knowledge or information of the occurrence.

The most serious question presented by the rulings on evidence is the refusal of the trial court to permit Whitney to

be interrogated as to whether his bail had not been increased by the district attorney. Whitney, himself, after his discharge from the society, seems to have been engaged to some extent in illegal occupations. He was arrested for maintaining a pool room and gave bail to answer to the charge. The morning of the trial of this case he was again arrested and the defendant sought to prove by him that his bail had been increased to ten thousand dollars, on failure to furnish which he was still kept in arrest. Whitney told the district attorney of his transactions with the defendant. Now, though the evidence, other than that of Whitney, was sufficient to warrant the submission of the case to the jury, still his testimony bore most strongly against the defendant. Indeed, if Whitney was credited, it is difficult to see how there could be any question as to the defendant's guilt. Therefore, it was most important to the defendant to show, as affecting Whitney's credibility, the bias of the witness and the motive which might have induced the giving of his testimony. "It is always competent to show that the witness produced upon the trial of an action is hostile in his feelings towards the party against whom he is called to testify," and this is not a collateral inquiry, but may be proved by others than the witness himself. (*Schultz* v. *Third Ave. R. R. Co.*, 89 N. Y. 242.) If the witness had been arrested and his bail raised so that he could not get at liberty, and he was testifying under what may be termed duress so as to save himself, it was competent to show it. The learned district attorney does not defend the ruling of the court in this respect. His only answer to the claim of error is that the bias of the witness sufficiently appeared otherwise than by the excluded testimony. We think not. Nevertheless, we are frank to say that had this case been submitted to the jury under a proper charge we might have felt justified, under section 542 of the Code of Criminal Procedure, in disregarding the errors pointed out, but those appearing in the charge are such as we cannot ignore.

After defining what constituted a house of ill-fame or disorderly house, the learned trial court charged: "There are

three questions which must be determined affirmatively by you before the defendant can be convicted  *  *  *  the first question is : Was the house number 148 West 33rd street a house of ill-fame, resorted to or occupied by women for lewd purposes?  *  *  *  If you find that this house was a disorderly house, or a house of ill-fame, the next question is : Did the defendant have knowledge of its character?

" The next and third question is : Did he, with knowledge of its character, wilfully neglect and omit to perform the duty enjoined upon him by law, in reference to that house ?

" The knowledge of the existence of the house may be acquired by the defendant in different ways.  It is not necessary that there should be evidence before you of some one having told him that such a house was a house of ill-fame ; nor is it necessary that there should be evidence before you which would prove that the defendant saw disorderly and indecent practices and conduct in that house, in order to charge him with knowledge of its character.

" Knowledge of the character of the house may have been acquired by the defendant in many ways, in the discharge of his duty as police officer in that precinct.  It is the conscious knowledge that such house was a disorderly house, knowing it to be so ; and however that knowledge was conveyed to him, if it was conveyed to him, or however that knowledge was acquired by him, if he did have that knowledge, becomes immaterial, if you find as a fact upon this evidence that he had knowledge that that was a house of ill-fame.

" If you find as a fact that he did have knowledge upon this evidence then it becomes immaterial by what agency the knowledge was conveyed to him.

" As to the third question : Did he wilfully neglect or omit to perform the duty enjoined upon him by the law which I have read to you ? "

After retiring the jury returned and asked the court : " If Officer Glennon could not obtain evidence in the manner sworn to by him was it his duty under the law to employ other means ? "  In answer to this the court again read

the provision of the charter of Greater New York : " It is hereby made the duty of the police department and force, at all times of the day and night, and the members of such force are hereby empowered, to carefully observe and inspect all houses of ill fame or prostitution and houses where common prostitutes resort or reside, and to repress and restrain all unlawful and disorderly conduct or practices therein, to enforce and prevent violation of all laws, and to arrest all persons guilty of violating any law for the suppression and punishment of crime." It then continued : " There was, therefore, a duty imposed upon the defendant, as a member of the police force, to observe the law which I have read to you and it was his duty to take such means as lay within his power to carry that law into effect, and to see that it was enforced. That was the duty enjoined upon him." While the jury was thus instructed in general terms that it was the duty of the defendant to enforce the law so far as it lay within his power, not a word was said at any point as to what powers the defendant had as a police officer to break up a house of prostitution or to arrest its inmates. Even when the jury inquired whether there was a specific duty on the part of the defendant to seek for other evidence as to the character of the house, the answer gave them no information on the subject, but was confined to the vague generality that it was the defendant's duty to comply with the charter provision read. It is in the light of this charge that we must consider the exception taken by the appellant to the court's refusal to charge that " the defendant would not have been justified in making an arrest based upon no other evidence than the reputation of the house No. 148 West 33rd street as a disorderly house, house of ill-fame, or house of prostitution, nor upon evidence insufficient in law to secure a conviction should he have made such an arrest." The request was refused. It was repeated to the court in several forms, but as often the court declined to charge it, to which the defendant excepted. This request was not only correct so far as it went, but did not state the law as favorably to the defendant as he was entitled to. The power of the police or

peace officers to arrest for a crime is defined in sections 167 and 182 of the Code of Criminal Procedure. These are substantially but re-enactments of the rules of the common law. The keeping of a house of prostitution is a misdemeanor. (Penal Code, sec. 332.) Except in case of a felony a peace officer can arrest without warrant only for a crime committed or attempted in his presence. (Code Crim. Proc., sec. 177.) " As a general principle no person can be arrested or taken into custody without a warrant." (*Burns* v. *Erben*, 40 N. Y. 463. See *Snead* v. *Bonnoil*, 166 N. Y. 325.) The section of the charter cited made it especially incumbent upon the police to suppress disorderly houses, not, however, by changing the law of arrest, but by the exercise of the powers granted to peace officers by existing law. The defendant, therefore, would not only not have been justified in making an arrest without a warrant based only on the reputation of the house as a house of prostitution, but not even upon evidence sufficient to secure a conviction unless he himself had witnessed the violation of the law. Possessing the evidence but not witnessing the offense he should have applied for a warrant. The refusal to charge these requests was clearly error and most important in its character, when there is remembered the statement to the jury that the knowledge of the existence of the house as a house of prostitution might be acquired by the defendant in different ways; that it was not even necessary that some one should have told him that such was its character, but it was sufficient that he had " conscious knowledge " of the fact acquired in any way. If it was intended by these statements to instruct the jury that having " conscious knowledge " of the character of the house it was the duty of the defendant to repress and restrain disorderly and unlawful conduct therein by forcibly entering the premises and arresting the inmates, it was plain error. The defendant had no such power or authority, and the defendant's requests to charge were, therefore, germane and necessary to cure the error of the court in its principal charge. It may be that the court did not intend

to charge the doctrine of the defendant's duty to repress a disorderly house as broadly as we have stated, but certainly it was the interpretation which the jury might fairly and reasonably have adopted. The great fault with the charge is that so far as it discussed the defendant's powers and duties it dealt with abstractions and generalities only, and even when the jury requested instruction as to the duty of the defendant to obtain evidence, all it received in answer to its request was a recital of the charter provision. Doubtless it was the duty of the defendant to break up the resort and restrain and repress all disorderly conduct therein, but how was he to do it? What power and authority had he which would have enabled him to accomplish or aid in accomplishing that result? This was the subject which should have been explained to the jury and instructions on it seem to have been sedulously avoided. As we have already said, the evidence, even without that of Whitney, was sufficient to carry the case to the jury. If the defendant actually witnessed the lewd solicitation of men from the premises, then the offense of keeping a disorderly house was committed in his presence and he was justified in making an arrest without a warrant. If having a well-grounded belief that the house was a house of prostitution, even though he had not witnessed sufficient to justify him in making his arrest, it was his duty if he could obtain admission to the house, peaceably and without violation of law, to enter it to see what its nature and character was. So also the conduct of the inmates so far as could be observed in the street, though insufficient to justify the arrest, might well have required the application to a magistrate for a warrant, and it was his duty to diligently seek for evidence to present to the magistrate on such application. If the jury found, despite all the defendant's denials, that he did witness enough to justify his entry into the house and the arrest of its inmates or had ascertained enough to make application for a warrant and that he had purposely abstained from making an arrest, seeking entry into the house or making an application for a warrant, then it might well have found the defendant guilty.

But on the other hand if the defendant, acting in good faith, witnessed no transactions of the character narrated, and though vigilant in his endeavor to discover facts or proof justifying either an arrest or application for a warrant, was unable to do so, then he is not guilty, even though the place was a house of prostitution. This was the vital issue that should have been submitted to the jury. Had it been fairly submitted and the verdict returned against the defendant we should not have been disposed to interfere with that judgment unless for most serious errors, but that issue was not presented.

The judgment of the courts below should be reversed and a new trial granted.

Parker, Ch. J., O'Brien, Martin and Werner, JJ., concur; Gray and Bartlett, JJ., dissent.

Judgment of conviction reversed, etc.