### PHELPS v. McADOO, Police Com'r, et al.

(Supreme Court, Special Term, Kings County. June, 1905.)

1. PROCESS—SEARCH WARRANT.

By the express provisions of Code Cr. Proc. § 799, an officer may not break into a place under a search warrant, unless, after due notice of his authority and purpose he be refused admittance, and his doing so otherwise is a criminal offense by the express provisions of Pen. Code, § 120.

2. GAMING—ENTERING HOUSE WITHOUT WARRANT—STATUTES—VALIDITY.

Laws 1901, p. 138, c. 466 (Greater New York Charter, § 318), empowering the police to enter any house if two householders report in writing to the police commissioner or his deputy that there are good grounds for believing that it is a common gambling house, is unconstitutional.

3. SAME—ENTRY ON SUSPICION.

Greater New York Charter, § 315 (Laws 1901, p. 136, c. 466), empowering the police to carefully observe and inspect all gambling houses, and to restrain all unlawful and disorderly conduct or practices therein, does not give the police a right to forcibly enter a house without a warrant, on suspicion that it is a gaming place.

Suit by John Phelps, individually and as president of the West Side Club, against William McAdoo, as police commissioner, and others. Motion for an injunction to restrain defendants from a continuous trespass. Motion granted.

Emil E. Fuchs, for plaintiff.
Patrick E. Callahan, for defendants.

GAYNOR, J. A captain of police with twenty-five policemen armed with axes suddenly broke into the rooms of the West Side Club on the second story. They did not seek admission in an orderly way by the door, but ran up ladders and broke in the windows. They then broke and smashed with axes and other weapons, doors, windows, ceilings, mantelpieces, water-closet bowls and urinals, electric fans, pictures and other things. The photographs exhibited to the court show that they wrecked the place. They arrested three persons, but Mr. Justice Blanchard of the Supreme Court discharged them on a writ of habeas corpus for total lack of evidence, and with the concurrence of the district attorney of New York county. The above act of mob violence was one of a series of trespasses by the police authorities upon the said premises.

They acted without a warrant. But it should be said in vindication of the law that no warrant would have justified such acts of violence and wantonness. The law does not even permit a police officer to break into a place under a search warrant unless "after notice of his authority and purpose he be refused admittance" (Code Cr. Proc. § 799), and it is made a criminal offense for him to do so (Penal Code, § 120).

It may be that the members of this club commit the crime of betting on horse races in the privacy of their rooms, as the police authorities claim, but there is no evidence of it. No doubt there is much private betting and gaming in our clubs. It might be well if the police authorities should soon break into and smash the interior of one of our leading clubs with mob violence, for every one would then perceive the enormity of their offense, although it would be no greater than their lawless trespasses against the houses and persons of the weak and uninfluential. One reason given for the lawless violence on this place is that the building is "reported," as an affidavit of a police captain says, "to be owned by one Theodore Allen." I do not know who he is; but the law does not permit his building to be unlawfully broken into by the police any more than another man's. The way the law directs the police to do is to get

evidence through their secret service or otherwise against the club, a thing easy enough, if it be such a gross offender, and then get a warrant for the arrest of the guilty ones, and have them tried, and surely convicted and sent to prison. That is the way of the law, and it is the only efficient way.

The notion of any police official that he may go about smashing into houses and clubbing people without evidence or a warrant, simply because he, forsooth, "suspects" them, would have to be deemed insane in a free government, if it did not arise out of ignorance or a bad motive. And to make the police force do such lawless work is to degrade them. It is not to be wondered at if policemen who are thus taught lawlessness by their superiors occasionally do individual acts of lawlessness.

If it be asked, "What is to be done if no evidence can be obtained?" the answer of the law is plain and emphatic, "Do nothing." Not even a murderer can be arrested and imprisoned without evidence. Cannot the police officials understand that? And if any house or place be so decorous and orderly that no one can see anything wrong about, and no evidence can be got against it, it must be left alone. That is the law of all free governments. In despotisms they sack houses and arrest people at will.

Do the police ever get any evidence against betters on horse races, and cause a conviction? Have they caused even one conviction? The law does not sanction government by the axe and club. That is the way in Russia, to some extent, but not here in our free government. Ours is a government of laws, and not of men. Russia is a government of men, and not of laws. The highest official with us has to keep within the laws prescribing his duties and the limitations of his powers.

The pernicious and destructive notion is abroad to some extent that "good" officials, that a "good" police commissioner and "good" police captains, should be permitted to overstep the law. Cannot people who talk like this understand that the good official who oversteps the law is making a precedent for his bad successor? As Rufus Choate said in warning to public officers in an argument before them:

"You are good men, and live in good times; but you set an example for bad men in bad times."

It was on the same occasion that he read that great article of the Massachusetts Bill of Rights promulgating government in the three departments, legislative, executive and judicial, to the end that it should be a government of laws and not of men, declaring that he never read it "without a thrill of sublimity," viz.:

"In the Government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end that it may be a government of laws and not of men."

It is criminal for officials to set at naught and trample upon foundation principles of free government like this. It is for the

police authorities, who belong to the executive department, to get evidence of criminal offenses and present it to the judicial department, and not go about passing judgment themselves and doing unlawful violence.

The counsel for the plaintiff advances the extraordinary argument that the police should have entered the place in the way prescribed by section 318 of the city charter (Laws 1901, p. 138, c. 466). It purports to empower the police to enter any house in the city of New York if two householders report in writing to the police commissioner or deputy commissioner that there are good grounds for believing that it is a common gambling house.

But this section of the charter is unconstitutional and void. No house can be forcibly entered and searched anywhere in this country except under a warrant obtained from a magistrate on sufficient cause proved before him on oath. Our ancient Bill of Rights, which is deemed fundamental law, contains the following explicit provision, which is also in the Constitution of the United States, and in the constitutions or bills of rights of all of our states, viz.:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

We have far more to fear from the loss of this priceless inheritance of free government than from all kinds of betting and gaming; than from all the vices and crimes combined. Exercise of arbitrary power in a free government is the archvice; and it brings in its train a horde of vices, especially the despicable vices of official extortion and blackmail. If the police authorities are permitted to invade houses at will, they can by threats thereof levy extortion. and blackmail without limit.

The contention of the police officials is that they acted under section 315 of the city charter (Laws 1901, p. 136, c. 466). It purports to empower the police as follows:

To "carefully observe and inspect all places of public amusement, all places of business having excise or other licenses to carry on business; all houses of ill fame or prostitution; all lottery offices, policy shops, and places where lottery tickets or lottery policies are sold or offered for sale; all gambling houses, cockpits, ratpits, and public common dance houses; and to repress and restrain all unlawful and disorderly conduct or practices therein."

We have here lawful and unlawful businesses and places enumerated all in one class, with a provision that the police shall "carefully observe and inspect them," and "repress and restrain all unlawful and disorderly conduct or practices therein."

Of course the police may be detailed to and stationed in theatres and other licensed places, to some extent, for the purposes mentioned. But to station them in gambling houses and the other unlawful places to observe and inspect and keep order would be to license such places, and this loose statute does not mean any such thing. By so interpreting it, however, police officials have in the past claimed and obtained entry into all such places, to observe and

inspect them, and by that means levied weekly or monthly payments upon them, and in that way collected vast sums annually.

The recent committee of nine which investigated the abuses of those who rule the police in the city of New York, recommended to the Legislature the repeal of the two charter provisions discussed above, for the reasons which I have here stated.

But there can no longer be any excuse for police officials claiming the right to forcibly enter into such places without a warrant, for the courts have decided that this section of the charter confers no such right. People v. Glennon, 37 Misc. Rep. 1, 74 N. Y. Supp. 794; Id., 175 N. Y. 45, 67 N. E. 125. Judge Cullen writing the unanimous decision of the Court of Appeals, which affirms the lower courts, points out that it confers no new powers of entry or of arrest; that it means that the police are to observe and inspect, etc., in the manner allowed by law throughout the state; that is to say, as the trial judge did in effect in that case, that the police could "repress and restrain disorderly and unlawful conduct therein by forcibly entering the premises," etc., "was plain error"; and that the duty to enter has reference only to a peaceable and lawful entry, i. e., "it was his (the convicted policeman's) duty, if he could obtain admission to the house peaceably and without violation of law, to enter it and see what its nature and character was." The same is decided in Hale v. Burns, 44 Misc. Rep. 1, 89 N. Y. Supp. 711; Id., 101 App. Div. 101, 91 N. Y. Supp. 929.

I strongly suspect that this club is used for book betting on horse races, and if the police will proceed according to law, and not by lawless spectacular raids without warrant, they can doubtless bring the guilty ones to justice.

Motion granted.