## County Court—Otsego County.

January, 1906.

# THE PEOPLE v. JOHN D. MULLEN.

(49 Misc. 289.)

1. NEW TRIAL—VERDICT ON INSUFFICIENT EVIDENCE.

Independent of any statute the trial court has inherent power to grant a new trial in a criminal case if the defendant has been in any way deprived of his constitutional right to a fair trial.

2. SAME.

Upon the trial of an indictment for burglary, third degree, and grand larceny, first degree, in breaking into and stealing from a bank in Gilbertsville, Otsego county, the evidence showed, beyond question, that the crime was committed by five men, but the only evidence tending to connect defendant therewith was the testimony of a witness that he was able to recognize defendant as the man who came from the bank at the time of the crime and stood about eight feet from him, the side and front of whose face he then saw, while he was being gagged and bound by three of the burglars; that afterward at police headquarters in New York city he identified him among eight strangers standing in a line; that from his general appearance as he saw him on the night of the crime he was able to identify him; that he was as positive in his identification as he was of any one; that when he identified in New York the defendant looked like the man he saw in Gilbertsville, or was like him; that he could not be positive in his identification but was as positive that the defendant was the man he saw in Gilbertsville as he was of anything, but his testimony left it in doubt as to which it was—whether defendant looked like the man he saw in Gilbertsville or was like him; he further testified that on the night of the burglary he observed that upon defendant's coat slipping from his shoulder he shrugged it up and that witness observed that he shrugged up his shoulders in the same manner on the train coming from New York. Defendant, after testifying that on the night in question he was in the city of New York, called three witnesses who testified that he was in New York city at a time so near the time in question that, if they were not mistaken and testified truthfully, the defendant could not have been at the scene of the burglary at the time alleged, but, upon the examination of these witnesses, circumstances reflecting upon their character and credibility and the probable truth of their testimony were brought out and the defendant was convicted.

*Held*, that as the testimony óf the witness as to the identification of the defendant could not be taken as an expression of a positive or even decided or firm opinion or belief that the defendant was the man, and the court had no means of knowing how positive the witness was of any thing or of any person, and, as the witness seemed doubtful whether defendant was the man he saw or only resembled him, and there being no evidence to sustain the testimony of the witness and no circumstances pointing to defendant as the guilty man, defendant's motion for a new trial, upon the ground that the verdict was contrary to law and the weight of evidence, should be granted upon the principle that no man should be deprived of his liberty except upon evidence sufficient to establish his guilt of the crime charged.

3. JURY.

If the defendant shrugged his shoulder during the trial in the manner described by the witness and the act was observed by the jury, there was no impropriety in their discussing the fact in the jury room.

MOTION for a new trial. The opinion states the case.

Merritt L. Bridges, district attorney, for People.

Henry Witte, for defendant.

BARNUM, J.: The defendant was convicted of burglary, third degree, and grand larceny, first degree, for breaking into a bank at Gilbertsville, in this county, May 2, 1905, and stealing therefrom $3,000.

The evidence showed beyond question that the crime as alleged in the indictment was committed by five men. The defendant did not contend that the crime was not committed as alleged. But he denies that he is guilty of any connection with the crime.

The only evidence tending to connect the defendant with the crime is the testimony of one Stockwell, who swore that he appeared near the bank at about 2 a. m. of that day and was bound and gagged by three men; that the fourth man came from the bank while he was being gagged and bound, and stood about eight feet front of him. That as he stood there he saw both

sioe and front of his face; that he was then able to recognize this man. That afterward at police headquarters in the city of New York he identified the defendant among eight strangers standing in a line as the man whom he saw at Gilbertsville at the time of the burglary about eight feet from him. He testified that he observed that night, which led him to identify the man, that he wore a soft hat crushed in on top and dark coat, his hat was dark, and white collar, and that he was of light complexion, recently smooth shaven, with traces of dark beard starting, dark hair and nearly straight nose and prominent jaw bones. That from his general appearance as he saw him on that night he was able to identify him. That on May second he observed that his, the defendant's, coat slipped from the collar down on his shoulder and he shrugged it up, and that he observed the same thing on the train coming up from New York.

In answer to the question, whether he could be mistaken in this identification, by the district attorney, he answered, " I am positive as I am of any one. Q. You are sure you are not . mistaken ? A. I am positive as I am of any one."

Upon the cross-examination he testified: " It was not a dark night. I could distinguish the features of a man very distinctly without a light. Q. A white man without a light? A. Yes, sir. Q. No mistake about that? A. At a certain distance. Q. At the distance of eight feet? A. Yes, sir. I looked at him a few minutes. He turned his face towards me. The side of his face was full towards me, and he turned the front of his face towards me. Q. And you were there observing that night for the purpose of future identification, is that correct? A. Yes, sir. Q. You did not see any man in that line that you could walk right up to and say, that you could identify that man as being in Gilbertsville that night, one of the men you saw in Gilbertsville that night? A. I saw one man that I could say, that I put my hands on. Yes, sir, a

man looked like the man I saw in Gilbertsville. Q. A man that looked like the man? A. A man that looked like him or was like him. Q. And that was this man, he looked like him? A. Yes, sir. Q. And you won't say now under oath that you can't be mistaken in this man's identification, as being the same man in Gilbertsville that night, you can't be mistaken that he is the man? A. I can't be positive. His coat slipped from his shoulder and he shrugged it up."

On the redirect examination he testified: "Q. Are you positive that this is the man you saw on this occasion? A. As positive as I be of anything."

The defendant as a witness in his own behalf testified that he was not in Gilbertsville the night in question; that he was never there; that on the night in question he was in New York city.

He called three witnesses, who testified that he was in New York city at a time so near the time in question that, if they were not mistaken and testified truthfully, the defendant could not have been in Gilbertsville at the time the crime was committed.

Circumstances were brought to light upon the examination of these witnesses reflecting upon their character and credibility and the probable truth of their testimony to such an extent that their credibility became a question for the consideration of the jury, and they were justified in not giving credit to their testimony. It is apparent from the verdict that they did not believe either of these witnesses.

The defendant asks that a new trial be granted upon the grounds that the verdict is contrary to law and against evidence and that the jury received evidence out of court, and was guilty of improper conduct in considering evidence which had been stricken out by the court, and the jury directed to disregard it entirely.

The defendant's attorney has presented an affidavit made by himself upon information and belief, to the effect that one of the jurors told him shortly after the verdict was rendered that three of the jurymen had told the jury in the jury room that they had noticed the defendant during the trial shrug up his shoulders in the same manner that witness Stockwell had testified that the man did whom he saw at Gilbertsville, and as he testified the defendant did on the trip from New York city to Cooperstown, which statement it is alleged influenced the entire jury in arriving at a verdict of guilty; and also that the same juryman stated to him that the jury had entertained evidence given by detective-sergeant Peabody that had been stricken out by the court, with instructions to entirely disregard it.

It is urged by the district attorney that declarations or affidavits of jurors cannot be considered for the impeachment of their verdict.

In People v. Draper, 28 Hun, 5; 1 N. Y. Crim. 138, the defendant's attorney read an affidavit, made by himself upon information and belief, alleging misconduct of the jury. The name of the informant or the source of information was not given. The court held that in the nature of the case it could only have come from the jurors or the officers in charge. The affidavits of the officers were read. In holding that information derived from the jurymen could not be received, the court say: "As declarations of jurors cannot be received to impeach their verdict, information derived from them would be incompetent." This case seems to have arisen after the Code of Criminal Procedure became operative.

The court say, in Ostrander v. People (28 Hun, 48), a case which arose before the Code of Criminal Procedure took effect, "It is a well understood and settled rule that affidavits of jurors . . . cannot be received to impeach their verdict."

An order was made denying a motion for a new trial in People v. Gallagher (75 App. Div. 44; 17 N. Y. Crim. 18). "Affidavits made by all the jurors were read . . . on the one side or the other as to what occurred . . . There was some disagreement between the jurors as to the facts sworn to by them respectively." The court say, in affirming the order, " It seems to be well settled that affidavits of jurors, in criminal as well as civil cases, are inadmissible for the purpose of impeaching their verdict," citing a number of cases, " So far, therefore, as the affidavits of the jurors may have tended to impeach their verdict, they were inadmissible, and, we assume, were not considered in the court below in determining the motion."

The court say, in Wilson v. People (4 Park. Crim. 631), " The affidavits . . . as to information from jurors concerning what took place in the jury room are utterly inadmissible. They are far worse in principle than the affidavits of jurors themselves to impeach their verdict, inasmuch as the jurors, without oath, have given information which is not admissible on their own statement under oath."

In Dalrymple v. Williams (63 N. Y. 361), the rule is well established, and at this day rests upon well understood reasons of public policy as connected with the administration of justice, that the court will not receive the affidavits of jurymen to prove misconduct on their part or any act done by them which could tend to impeach or overthrow their verdict. (Baylies New Tr. & App. [2d ed.] 591.)

I decline to consider the affidavit in the determination of this motion, alleging misconduct of the jury.

The decisions above quoted from seem to me to be decisive of the proposition that the affidavits of the jurors cannot be considered in so far as they tend to impeach their verdict; and also that their declarations cannot be used for that purpose.

It would be inconsistent to hold that affidavits of the jurors cannot be considered to impeach their verdict, and yet receive

and consider their bare declarations and statements made to a third party not under oath, which are decidedly more objectionable.

In addition to the danger arising from the juror not being under oath when his declaration is made, there is the added danger that he may not have been correctly understood by the one making the affidavit.

As to the contention that the jury had no right to consider the appearance and acts of the defendant during the trial, I cannot adopt the views urged in behalf of the defendant.

"Practically it is impossible to prevent jurors from observing the appearance and behavior of the accused very closely while he is in court during the trial. They will naturally draw inferences therefrom either favorable or unfavorable to him. . . . While we countenance the modern jury system and insist upon the right of the defendant to remain in court and to confront his accusers, we cannot close the eyes of the jury." (Underhill Crim. Ev. 67, note.)

It is not claimed that any juror claimed to have knowledge bearing upon the issue, at the time he was accepted as a juror; nor that any juror claimed to have learned any fact bearing upon the question at issue out of court. It is only claimed that some of the jurors claimed to have noticed during the trial an act of his which there was evidence tending to show was an eccentricity or habit of the defendant. If the defendant shrugged his shoulder, in the manner described by witness Stockwell, during the trial, and the act was observed by the jury, I think they had a right to discuss the fact in the jury room and that they committed no impropriety if they did so.

Certain evidence was received with the assurance that it would be later connected by the People with the acts of the defendant, in which the district attorney was disappointed, and the evidence was stricken out by the court, and the jury in-

structed to disregard it. This course was entirely proper. (People v. Glennon, 175 N. Y. 51.)

If the jury considered the testimony they acted improperly, and if the court should become convinced that they were guilty of such misconduct the verdict would be set aside. However no method is pointed out by which the court can ascertain the facts.

The Constitution guarantees to a defendant a fair trial, and no statute can deprive him of it. Independent of the statute the court has inherent power to grant a new trial if the defendant has been in any way deprived of that right. (People v. Bishop, 66 App. Div. 421.)

Four of the jurors have made an affidavit, which has been read by the district attorney, in which they swear that the evidence which was stricken out was not considered by them; that it was not discussed in the jury room, and was not considered so far as they know by any of the jurors. The question of misconduct of the jury is entirely eliminated and is not considered in any way. The case must be determined upon the testimony of witness Stockwell. The question to be determined is whether his identification of the defendant is sufficient to sustain the verdict.

It has been held that a witness may in a civil action for damages for an assault state his belief as to the identity of a person he saw, although unable to speak positively, if his belief be in the nature of an impression of the fact, not an inference or opinion. (Abb. Tr. Ev. 816; 2 Abb. Ct. App. Cas. 232, note.)

On the trial of a charge of attempt to burn a house, the wife of the owner of the house testified that she heard the voice of the defendant on the day before the attempt at night; that she had heard his voice but the one time, and again on the night of the attempt, and that she recognized it and could identify it. This evidence was held competent to go to the

jury and that they should give it such weight as it might be entitled to. (Commonwealth v. Hayes, 138 Mass. 186.)

In a negligence action upon a question as to the identity of a defective piece of metal which it was claimed occasioned the accident, the court held that it was proper to permit the question, "Have you any doubt this is the same piece."

The court say, "It was upon an issue of identity. In such an issue a witness may testify to opinion or belief. And a question like that put was proper to test the strength of his opinion or belief." (King v. N. Y. C. & H. R. R. R. Co., 72 N. Y. 607.)

A witness may testify directly to the identity of a person or thing seen by him at different times. If the impression of the witness is based on personal knowledge or observation, lack of positiveness in testifying to identity does not alone render the testimony incompetent, but goes only to its weight. A diversity exists among the cases as to whether a witness in identifying an accused person is stating a fact within his own knowledge or an opinion. Some authorities regard identity as a fact and require that the defendant be identified solely as a matter of the witnesses' own knowledge and personal recollection. (Underhill Crim. Ev. 68.) Another, and to my mind a reasonable view, is that in identifying an accused person a witness is expressing an opinion or impression founded on his observation of many details, as to his general appearance, dress and peculiarities. (3 Wharton & Stilles Med. Juris. 539; Commonwealth v. Dorsey, 103 Mass. 412.)

My view is that, even if the question does not in form call for an opinion, an identification is in most, if not all, cases largely a matter of opinion, formed from numerous details, which it is practically impossible to specifically narrate, so as to bring out all the facts.

It has been held that, after describing a person seen by him, a witness may state that in his opinion it was the defendant

or that he resembled him.    (Underhill Crim. Ev. 69, and cases cited.)

The rule is stated in 15 Am. & Eng. Ency. of Law, 924, that opinions may be given by a witness on a question of identity, this being one of the cases in which it is impossible for the witness to state all the facts on which his opinion is based.    The rule as above stated has been followed in England and a number of our States.

It is stated in Wharton Criminal Evidence (9th ed.), section 807, that, for the purpose of identification of an accused person, opinion evidence is admissible; that in fact the identification of one by a witness is in itself but an expression of opinion as to identity.

In People v. Blake (73 N. Y. 586), a witness for the People was asked on cross-examination if he would swear that the deceased was not choking the defendant. He answered, " I would not swear it; but don't think that he was."    A motion to strike out the last part was denied.    The court held on appeal that it was competent for the witness to testify to an impression or belief on the subject.    In the same case a witness was asked, " Which one was down, can you tell ?"    He answered, " The one that was shot,  .  .  .  to the best of my knowledge."    The court refused to strike out the words " to the best of my knowledge."

The court held in Carrington v. Ward (71 N. Y. 364), that a witness may testify to impressions.    One of the plaintiff's witnesses had testified to his impression and said that by impression he meant best recollection, which was held to be proper.

The authorities above referred to make it clear that the evidence of Stockwell was competent for the consideration of the jury, but they do not settle the question whether his testimony is sufficient without corroborative evidence to sustain the verdict.    He does not state that he is even firmly convinced in his mind that he is not mistaken.

The defendant in People v. Cameron (89 App. Div. 141; 18 N. Y. Crim. 44), was convicted of highway robbery, first degree, and sentenced to a state prison for nineteen years. The complaining witness was not corroborated. The defendant was identified by him positively. It was not a dark night; the defendant knocked him down and got upon him and held him down with his face close to him and robbed him. Complainant had a good view of him; he saw him again the same night before he had changed his clothing and then identified him positively. A new trial was denied even though the complaining witness before the motion made an affidavit that he was not then positive.

People v. Jackson (182 N. Y. 70, *supra*, p. 342), is a case in which the defendant was positively identified by a woman who had never seen him before, and then had only a passing glance of him, not sufficient to enable her to discover that he was black. She testified that it was a man's build, his general appearance, his soft hat and expressive eyes that led her to subsequently identify him. It was a bright night. The court held that the weight that should be given her testimony was a question for the jury to determine. The court sustained the conviction, but there were strong corroboratory circumstances. The decedent's watch and money purse were traced directly to the possession of the defendant. So that the conviction did not rest alone upon the identification of the defendant by the witness.

In People v. Williams (29 Hun, 523; 1 N. Y. Crim. 336), the witness said that he could not swear that the man he saw near the place where the murder was committed was the defendant. That he did not know whether it was he or not. Asked if he had an impression he answered under objection, " I don't know for certain, only whom I thought it was; I thought it was William Cortright (the defendant) but I don't know. I had known him for a number of years, and seen him frequently. That it was his impression at the time that it was the defendant."

Defendant's motion to strike the evidence out was denied, which was held to be error. The court in reversing said in effect that a witness should not be allowed to state his " impressions " or thoughts; that he should state knowledge, memory, recollection of facts in respect to the identity of individuals.

I have examined the authorities with great care and have been unable to find one in which a conviction has been sustained upon the uncorroborated testimony of a witness tending to identify the accused, who did not identify him positively.

Stockwell's testimony in brief is, that he was able to recognize the man there May second; that he was able to identify him among eight men in New York city by the view he took of him May second, from his general appearance as he saw him on that night; that he is as positive in his identification as he is of any one; that the defendant looks like the man he saw in Gilbertsville, or was like him; that he cannot be positive in his identification; that he is as positive that the defendant is the man he saw in Gilbertsville as he is of anything.

He does not at any time state that he has a decided impression or opinion as to the defendant being the man he saw in Gilbertsville. When pressed upon that subject he says that he looks like him, or is like him, apparently leaving it in doubt as to which it is, whether he looks like him or is like him.

His testimony to the effect that he is as positive that he is the man as he is of anything, that he is as positive of his identification as he is of any one, cannot be taken as an expression of a positive or even decided or firm opinion or belief that the defendant is the man. We are left without means of knowing how positive the witness is of anything or of any person. The witness does not seem to base his statement that he cannot be positive in his identification upon a recognition of the fact that there is a possibility always that one may be mistaken in identifying an individual, but it appears from his expression that he is still beset with doubt as to whether he is the man, or

whether he only resembles the man, whom he saw at Gilberts-ville.

As the evidence stands in this case, there being no evidence to sustain the testimony of witness Stockwell, and no circumstances pointing to the defendant as the guilty man, Stockwell not expressing a positive opinion that he is right in identifying the defendant, I do not think that in deciding the question of fact upon the opinion of the witness a positive belief can be reached that the defendant is guilty, based upon the opinion of a witness who is not himself entirely convinced that he is right.

It is important that the guilty parties be punished, but it is not less important that no man be punished for the crime who is not guilty. While it seems probable from the defendant's testimony as to his former life, that himself and the State would be more secure with him in prison, yet no man should be deprived of his liberty, except upon evidence sufficient to establish his guilt of the crime charged.

Upon the record as it now stands I am convinced that the defendant's guilt is not established.

Motion for a new trial granted.

Motion granted.