PEOPLE v. BRINKER.

(City Magistrate's Court of New York City.   February 29, 1912.)

MUNICIPAL CORPORATIONS (§ 189*)—RIGHTS AND DUTIES OF POLICEMEN.

New York City Charter (Laws 1901, c. 466) § 315, requiring police officers to observe and inspect all places of public amusement, all places of business having excise or other license to carry on any business, all gambling houses, and to repress and restrain unlawful or disorderly conduct or practices therein, does not authorize a policeman to enter on private premises, where he believes gambling is carried on, forcibly and against the opposition of the inmates, and without a warrant for the arrest of any one therein.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 487, 523, 524; Dec. Dig. § 189.*]

Charles Brinker was complained against for a violation of law. Complaint dismissed.

Chas. S. Whitman, Dist. Atty., of New York City, for the People. Albert Blogg Unger, of New York City, for defendant.

McADOO, Chief City Magistrate.   The facts in this case are that one Arthur J. Lavery, a police officer of the city of New York, went to the side door of premises No. 86 Cortlandt street, from which a stairway led to the upper floors.   The doorway was ajar a few inches, and to a man inside he said he was a police officer and would like to inspect the premises.   The person at the door would not open it, and he attempted to push his way in.   The complainant was then seized by the defendant, who was standing by, and shoved forcibly out and on the sidewalk.   The complainant announced himself as a police officer when he attempted to enter.   He testified that he was intending as such to inspect the premises under the provisions of section 315 of the Charter of the City of New York (Laws of 1901, c. 466), which makes it the duty of police officers:

"To observe and inspect all places of public amusement, all places of business having excise or other license to carry on any business, * * * all gambling houses, * * * and to repress and restrain all unlawful or disorderly conduct or practices therein."

The officer testified that he had reason to believe a felony was being committed in the premises, namely, a violation of section 970 of the Penal Code (Consol. Laws 1909, c. 40), in that bets were being made on horse races and other games of chance played.   It does not appear that he was ever in the premises himself or ever arrested any of the people found therein.   He based his belief on the fact that he

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

had heard through others that a warrant had been issued against certain people on the premises who were alleged by a citizen complainant to have gambled, within the meaning of this section of the Penal Code. When the case came before the magistrate, the witness did not appear and the case was dismissed. Also, that he and other officers had seen a number of men go in the side door, although there were no signs upon the building indicating that there was any business conducted therein. The defendant's counsel offers to prove that the place is conducted as a social club.

The police inspector of the district asks me to make such decision of the case that will enlighten the police as to their powers and duties in the premises.

The power of the police under this section has been passed upon in the following, among other, cases: Phelps v. McAdoo, 47 Misc. Rep. 524, 94 N. Y. Supp. 265; Hale v. Burns, 101 App. Div. 101, 91 N. Y. Supp. 929; Weiss v. Herlihy, 23 App. Div. 608, 49 N. Y. Supp. 81; People v. Glennon, 175 N. Y. 45, 67 N. E. 125.

In the case of Phelps v. McAdoo the question was: Did the police —upon certain facts in their possession, tending to show that a crime was being committed in certain premises—have a right to forcibly make their way therein?. This was decided adversely to them, and the learned judge who wrote the opinion referred to the misleading nature of this section of the charter. It has had various constructions by the courts, and has, I believe, been much investigated by the police.

In the case of People v. Glennon, above referred to, the question arose as to whether it was not the bounden duty of a police officer to enter forcibly, if he could not do so otherwise, on premises where violations of the law were alleged as being committed. It was decided that he had not the right to do so unless he saw violations of the law or had a warrant for the arrest of some person therein; that a well-grounded belief that the house was a house of prostitution would only justify his entry if he could peaceably obtain admission. Glennon, as a police officer, was indicted for allowing a disorderly house for the purpose of prostitution to exist in the precinct where he served. His defense was that he did not have knowledge of violations of the law committed on the premises. He was tried and convicted, largely because the trial judge led the jury to infer that under section 315 of the Charter he had the right to forcibly go in and get evidence and suppress the place. The Court of Appeals set aside this verdict on the ground that this section of the charter did not give the power to forcibly enter without seeing crime committed in the house in question or had a warrant for the arrest of some one therein. If it had been held otherwise, police officers would be liable to indictment and conviction on proof that gambling and disorderly houses existed in the territory where they exercise their functions; they being armed with power under this section to forcibly enter without warrant to collect evidence and suppress such places.

If the construction of this section favored by the police in this case is held to be law, their responsibility or failure to suppress gambling and disorderly houses would be largely increased, and they would lay themselves, failing to do so, liable to criminal prosecution.

The section in question, while making it their duty to inspect and observe certain classes of premises, does not say that they shall do so forcibly and against the opposition of the inmates and without warrant for the arrest of some one therein. I have no doubt that, if the Legislature had intended to abrogate the common law with reference to the sanctity of dwelling houses and other premises, they would have said so.

If the Court of Appeals in the case of Glennon believed the police had such powers, it is difficult to say how the conviction could have been set aside. It is therefore clear to my mind that the highest courts have decided that no such power as that claimed by the complainant in this case exists in the police. If the police officer has good ground, from facts in his possession, to believe that a felony is being committed in inclosed premises, where the emergency requires that those engaged in the commission of the crime be apprehended at once, there is nothing in the appealed case to contravene the opinion that he might, under such circumstances, and at his own risk, as to the reasonable nature of his conclusions and the correctness of his information, forcibly enter such a place without a warrant; but such cases in police practice are remote.

As the attempted forcible entry in this case was not justified in law, the complaint is dismissed.