# FOURTH DEPARTMENT, JANUARY, 1946.

## (January 9, 1946.)

THE PEOPLE OF THE STATE OF NEW YORK, Appellant-Respondent, *v.* JOSEPH DI CARLO, JOHN F. TRONOLONE and THOMAS F. O'NEILL, Respondents-Appellants.

· MEMORANDUM BY THE COURT. As to defendant O'Neill, the record establishes (1) that gambling places were operated in his precinct; (2) that he had full knowledge that such operations were taking place; (3) that there was sufficient proof from which a jury could say that he failed to use available means to suppress such operations. As to whether this was willful neglect of duty is a question of fact for the jury. (*State* v. *Brattrud*, 210 Minn. 214; Note 134 A. L. R. 1250, 1251, 1258; *People* v. *Glennon*, 175 N. Y. 45, revg. 78 App. Div. 271, S. C. 37 Misc. 1.) Although the record supports the charge that the other two defendants violated the law insofar as gambling is con-cerned, there is no proof in the record from which it could be found that they had aided and abetted O'Neill in neglect of his duty. The conviction on the fourth count should be reversed and the fourth count dismissed as to defendants Di Carlo and Tronolone. As to defendant O'Neill, we cannot say that he was not prejudiced by his trial with the other two defendants. In the interest of justice his conviction should be reversed and a new trial should be granted to him. As to the conviction of Di Carlo and Tronolone on the first count, the record supports such conviction.

As to defendant Joseph Di Carlo: Judgment of conviction on the first count affirmed. Judgment of conviction on the fourth count reversed on the law and the indictment so far as it relates to the fourth count dismissed as to such defendant. Order dismissing the second and fifth counts affirmed.

As to defendant John F. Tronolone: Judgment of conviction on the first count and order overruling demurrer affirmed. Judgment of conviction on the fourth count reversed on the law and the indictment so far as it relates to the fourth count dismissed as to such defendant. Order dismissing the second and fifth counts affirmed.

As to defendant Thomas F. O'Neill: Judgment of conviction reversed on the law and facts and a new trial granted in the interest of justice. Order dismissing the fifth count affirmed.

LOVE, J. (dissenting in part). The indictment charges three defendants, Di Carlo, Tronolone and O'Neill in five counts with the commission of the following crimes: The first three for the crime of conspiracy, (a) to keep gaming and betting establishments, (b) to commit the crime of book-making and (c) to obstruct justice and the due administration of law pertaining to gambling. The fourth and fifth counts in substance charge the defendant O'Neill, a public officer, with neglect and omission of his duty as a police officer, and the other two defendants with aiding and abetting him. The jury found O'Neill and the other two defendants guilty under the fourth and fifth counts, and Di Carlo and Tronolone guilty under the first two counts as well. After conviction the trial court dismissed the second and fifth counts of the indictment.

The majority of this court have reached the conclusion the court's action in dismissing the second and fifth counts was not unjustified. With that we agree. We are also in accord with the majority's conclusion that Di Carlo and Tronolone were properly convicted under the first count but that no suffi-cient proof is in the record as against them to warrant a conviction under the fourth and fifth counts. We disagree with the other members of this court solely as to the disposition made of the conviction of the defendant

O'Neill under the fourth count of the indictment insofar as it remits that count for a new trial. In our judgment, the evidence in this record was insufficient to establish the guilt of O'Neill of a willful neglect or omission of his duties as a police officer under either the fourth or fifth counts, so that he is entitled to a dismissal of the indictment.

O'Neill became a member of the Buffalo Police Department in 1927, serving as a patrolman until 1939, when he was made a lieutenant. In 1942, he was again promoted and made captain. He was assigned to Precinct No. 10 in which the gambling place of the other two defendants was conducted. During his entire period of service in the department, no disciplinary charge had ever been preferred against him. As a matter of fact, his superior officers testified upon this trial that he was an excellent police officer.

The evidence establishes, and we believe conclusively, that the other two defendants did conduct betting places at 379, 381, 383 Niagara Street. As to the Allen Street gambling place, there is no evidence connecting any of these defendants with it.

As we read this record, there is no direct evidence substantiating the charge of neglect or omission of duty by O'Neill. It is claimed by the prosecution, however, that there is proof of enough circumstances from which the inference of O'Neill's guilt of willful omission of duty may be fairly drawn. In effect, this would permit the jury to charge this police officer with willful neglect of duty in failing to suppress a gambling establishment because he knew that his codefendants were conducting a gambling place on Niagara Street, and because arrests had been made because of gambling, there, by police officers operating from general police headquarters. Such a conviction would rest upon circumstantial evidence. It would not exclude to a moral certainty, as required, every other reasonable hypothesis except guilt. (*People* v. *Suffern,* 267 N. Y. 115; *People* v. *Razezicz,* 206 N. Y. 249.) When the circumstances upon which the prosecution relies to establish O'Neill's guilt are considered in the light of other facts established by undisputed testimony, it is quite apparent that the factors upon which the prosecution relies are consistent with the defendant's innocence. It is undisputed that O'Neill reported the premises as suspected gambling places to his superiors. At one time during the period in question, he told the head of the gambling squad operating from general headquarters that if there was gambling in his precinct, he desired him to come into the precinct and endeavor to eradicate it. Again it is undisputed that he asked the inspector, his immediate superior, to intercede with the Commissioner of Police in his behalf and have him transferred to some other precinct because of his inability to obtain evidence against the suspected gambling establishments by what O'Neill considered legal means. The record does not establish any close relationship between this defendant and his codefendants. There is not a scintilla of direct testimony that O'Neill in failing to suppress gambling in his precinct was activated by any evil or corrupt motive. The prosecution's position that the provision in the Buffalo City Charter (Local Laws, 1927, No. 4 of City of Buffalo [published in Local Laws, 1932, p. 21], as amd.) which authorized the commissioner on the complaint of a member of the department to deputize any member of the police force, if necessary, to break into premises for the purpose of arresting persons violating gambling laws, is hardly tenable. A similar provision of the Greater Charter in the City of New York (L. 1901, ch. 466) has been held unconstitutional. (*People* v. *Glennon,* 175 N. Y. 45; *People* v. *Defore,* 242 N. Y. 13; *Phelps* v. *McAdoo,* 47 Misc. 524; *Colby* v. *Bingham,* 62 Misc. 396; *People* v. *Brinker,* 140 N. Y. S.

448.) Bearing in mind then the circumstances upon which the prosecution relied to establish the guilt of O'Neill, considered in connection with the explanation offered by him of his failure to suppress the gambling, the fact that in order to commit the crime there must have been sufficient proof to warrant a finding that his conduct showed a willfulness which made it criminal, the entire absence of any proof whatever that in what he did he was motivated by any evil or corrupt purpose, and that during his entire membership of the Police Department prior to this indictment, he had never been the subject of a disciplinary charge, it seems quite clear that on this record, at least, his guilt was not established by a sufficient quantity of proof, so that he was entitled at the conclusion of all of the testimony to a directed acquittal on the fourth and fifth counts.

As to defendants Di Carlo and Tronolone: All concur in decision. Present — Taylor, P. J., Dowling, Harris, Larkin and Love, JJ.

As to defendant O'Neill: All concur in decision except Larkin and Love, JJ., who concur as to reversal of the judgment of conviction but dissent as to the granting of a new trial and vote for dismissal of the indictment so far as it relates to the fourth count as to such defendant, in an opinion by Love, J., in which Larkin, J., concurs. Present — Taylor, P. J., Dowling, Harris, Larkin and Love, JJ.

As to defendant Di Carlo: Judgment of conviction on the first count affirmed. Judgment of conviction on the fourth count reversed on the law and the indictment so far as it relates to the fourth count dismissed as to such defendant. Order dismissing the second and fifth counts affirmed.

As to defendant Tronolone: Judgment of conviction on the first count and order overruling demurrer affirmed. Judgment of conviction on the fourth count reversed on the law and the indictment so far as it relates to the fourth count dismissed as to such defendant. Order dismissing the second and fifth counts affirmed.

As to defendant O'Neill: Judgment of conviction reversed on the law and facts and a new trial granted in the interest of justice. Order dismissing the fifth count affirmed.