## STATE v. KARAS.

No. 2555.   Decided November 13, 1913 (136 Pac. 788).

1. BURGLARY—SUFFICIENCY OF EVIDENCE. Evidence *held* not sufficient to connect accused with the offense so as to sustain a conviction for burglary. (Page 507.)

2. CRIMINAL LAW—EVIDENCE—OPINION EVIDENCE—VOICE. While evidence of the sound of voice is admissible for identification purposes, it should be reasonably positive and certain, and based upon some peculiarity of the voice, or upon sufficient previous knowledge by the witness thereof. (Page 511.)

3. CRIMINAL LAW—TRIAL—PROVINCE OF JURY. While the jury are the judges of the facts and the weight of the evidence and credibility of the witnesses, and evidence tending to prove

an issue, however slightly, is admissible, it is a preliminary question for the court, and not the jury, to decide in every case whether the evidence will justify a verdict for the party adducing the evidence. (Page 513.)

4. CRIMINAL LAW—PROOF—REASONABLE DOUBT. The accused must be proven guilty by the evidence beyond a reasonable doubt. (Page 515.)

APPEAL from District Court, Seventh District; *Hon. A. H. Christensen,* Judge.

Gust Karas was convicted of third degree burglary. He appeals.

REVERSED AND REMANDED FOR NEW TRIAL.

*S. A. King* and *Claude King* for appellant.

*A. R. Barnes,* Attorney- General, and *E. V. Higgins,* and *G. A. Iverson,* Assistant Attorneys General for the State.

STRAUP, J.

The defendant was convicted of burglary in the third degree—breaking into a tent in the daytime—and appeals.

The sufficiency of the evidence to show the commission of the offense is conceded. The question presented for review is the sufficiency of the evidence to connect the defendant with it.

Near Schofield, some five tents in a row, numbered from twenty-one to twenty-five, and from ten to one hundred feet apart, were maintained and occupied by miners working in a mine near by. Tent twenty-five was burglarized. It was occupied by two miners, who, as they testified, at about seven o'clock in the morning locked the door and left the tent to go to work. That tent was about one hundred feet from a highway to the west of it. Two tents to the east of tent twenty-five, and about one hundred feet from it, was tent twenty-three. That tent was occupied by the defendant and about fourteen other miners and a cook. The miners of that

tent also left about seven o'clock, leaving the defendant and the cook alone in the tent. The defendant, on account of an injury, had not worked for several days, and for that reason remained at home about his tent on the day in question. At about eight or eight-thirty o'clock the cook left the tent to go to Schofield, leaving the defendant alone. Between seven o'clock and nine o'clock in the morning some one entered tent twenty-five by cutting a hole through the lumber part of the tent, disarranged the furniture, and took $1.25 in money and a watch chain belonging to the occupants of that tent.

A witness for the state, a grocer, testified that that morning at about nine o'clock he went to the front door of tent twenty-five to deliver a can of coal oil. He unlocked the door with a key the occupants had put to one side, and then tried to push the door open. Some one on the inside held it, and said: "Hello." The witness said: "Hello, there. I have some stuff to deliver here." The person on the inside: "Get out! Go on and tend to your business." The witness: "I have some stuff to deliver here." The person on the inside: "Get out! Do you want to get in my house?" The witness left without opening the door, or seeing the person on the inside, and went up the street a hundred yards or more, and there talked a little while with some one living in a house near by, and then returned to tent twenty-five. On his way back he saw the defendant at the rear of the tents, bareheaded, and without a coat or vest. He testified that he did not see the defendant come out of tent twenty-five, and while talking with such other he could not see it, and did not watch it, nor did he know or notice if persons were in or about tents twenty-four, twenty-two, or twenty-one. Just where the defendant was when he saw him is not definite. On direct examination, in response to questions asked him, the witness testified: "I saw him come from the behind. Q. Where did he come from? A. There was two tents together, and he came from the south, you know. (Tent 25 was west of tent 23.) Q. He came from where? A. South from the tent where I was to deliver the stuff." On cross-examination he

said: "I saw the defendant between tents twenty-two and twenty-three, or twenty-three and twenty-four.   Q.   You wouldn't say it was not between twenty-two and twenty-three?   A.   No, sir."   When the witness returned to tent twenty-five he opened the door, left the oil, and then locked the door and put the key where he had found it.   He then noticed the hole in the tent.   Then the witness, after he had merely testified that he knew the defendant, and that he thought he lived in tent twenty-two (instead of twenty-three), and without any showing as to how long or well he had known him, or under what circumstances, or ever had previously talked with him, or heard him talk, was asked by the state: "Q.   Do you know whose voice it was (inside the · tent when he was first there)?   A.   Yes, sir.   Q.   Could you tell, can you tell whose voice it was?   A.   By myself I can tell.   Q.   What is it?   A.   I did not see in who it is; by the voice I can tell.   Q.   Whose voice was it?   A.   Gust Karas' voice (the defendant)."   On cross-examination, after testifying that he was an Italian, that the defendant was an Italian, and that what he heard was spoken in English, he was asked and he answered: "Q.   You did not see Gust Karas in the tent, did you?   A.   No, sir.   Q.   And you heard a voice you thought was Gust Karas'?   A.   Yes, sir. Q.   As matter of fact you do not actually know it was Gust Karas?   A.   By myself I am sure.   Q.   I am not asking you about that, by yourself.   You thought that you recognized his voice?   A.   Yes, sir.   Q.   But as matter of fact you do not know it was actually his voice, do you?   A.   I was certain myself.   Q.   Well, you could have been mistaken about that?   A.   Well, I might have been mistaken; I wouldn't swear it; I did not see him, but his voice told me it was him.   Q.   You thought it was his voice?   A.   Yes, sir.   Q.   You know there are lots of people whose voice sound alike?   A.   I believe that.   Q.   This voice that you heard you thought was his voice, and that was all there was to it? A.   Yes, what I thought.   Q.   But as matter of absolute fact you don't know whether it was him or not, do you?   A.   No, sir.   Q.   You wouldn't swear now, as a matter of fact, that

it actually was him? A. No, I just swear by myself. Q. That you thought it was his voice? A. Yes, sir. Q. That is all? A. I didn't see the fellow; but myself I think it was the fellow." This is all the evidence tending to connect the defendant with the commission of the offense.

The defendant testified that he had lived at tent twenty-three for about seventeen months; that he had known the grocer for about a year from seeing him deliver merchandise at the tents, but he had never talked with him; that several days before the time in question he was hurt in the mine and laid off, staying about his tent; that he was not in tent twenty-five and denied he committed the offense; that he was at or near the rear of his tent on the occasion testified to by the grocer, but was then returning from a closet in the rear and to the south of the tents, and from gathering sticks for a fire, and that he then saw the grocer pass along in front. He further testified he could not talk English. The record shows his testimony was given through an interpreter.

At the conclusion of the state's case, and at the conclusion of all the evidence, the defendant asked, that a verdict be directed in his favor on the ground that the evidence was not sufficient to connect him with the offense. The motions were denied and the case submitted to the jury, who found the defendant guilty.

The state, to support the verdict, points to but one thing— the testimony of the grocer (1) that he recognized the defendant's voice in the tent, and (2) shortly thereafter saw him in the rear, not of tent twenty-five, but between tents twenty-two and twenty-three, or twenty-three and twenty-four, coming from the south; tent twenty-five being to the west. The second may readily be dismissed. Had the defendant not resided there, had he been a stranger, and not there in pursuit of some proper calling or business, his unexplained presence about the tents or in the vicinity where the offense was committed shortly before or after its commission might be significant, and give rise to the inference of more or less weight that it was he who committed the offense. But, residing as he did

at tent twenty-three for more than a year, his presence at eight or nine o'clock in the morning at the rear of his tent, or between his own tent and tent twenty-four or twenty-three, coming from the south, the direction of the closets, "just walking along regularly," as testified to by the grocer, without a hat, coat, or vest, does not raise any such inference. His presence under such circumstances is just as consistent with innocence as with guilt.

Now, as to identity by the voice, the one thing upon which the state chiefly relies. Undoubtedly voice is a competent means of identification, and one by such means alone may be sufficiently identified. In some instances identification by such means may be as ponderous as identification by sight. But the testimony should be reasonably positive and certain, and based upon some peculiarity of the person's voice, or upon sufficient previous knowledge by the witness of the person's voice. And to that effect are the texts and cases upon which the state relies. (6 Ency. Ev. 923; 12 Cyc. 493; *State v. Babb,* 76 Mo. 502; *Evans v. State,* 62 Ala. 6; *Brown v. Commonwealth,* 76 Pa. 319; *Commonwealth v. Williams,* 105 Mass. 62; *Commonwealth v. Hayes,* 138 Mass. 185; *State v. Hopkirk,* 84 Mo. 278; *People v. Mullen,* 49 Misc. Rep. 289, 99 N. Y. Supp. 227.) They show that evidence similar to that adduced in the case before us is competent and admissible; but none of them go to the extent of holding that evidence of the character here adduced is alone sufficient, as to identity, to support a judgment of conviction. In some of them the question arose only as to the competency and admissibility of the evidence; in others, where the question of sufficiency was involved, there was other evidence to connect the defendant with the commission of the offense; and in all of them it was shown that the witness had previous knowledge of the voice of the person sought to be identified, or identified him by means of some peculiarity of the voice, except the case of *State v. Mullen,* but which is strikingly against the state's contention. The cases show it is common practice to allow witnesses, as to identity, to express their belief, or best judgment, or opinion,

when the facts or circumstances upon which it is based are shown, and when they appear to justify it. That is, to permit a witness to express his belief or opinion as to identity, it is not essential that he be capable of testifying that he is positive and certain as to the person; he may be permitted to express a well-founded belief, or his best judgment, or opinion, when his means of knowledge, or the facts or circumstances upon which his belief or opinion is based, are shown, and when they appear to justify it. But when a conviction is sought on such testimony alone, to be sufficient to support it, the testimony should be something more than the mere belief, or best judgment, or mere opinion, of the witness; for if the witness is not capable of testifying with that degree of positiveness and certainty as to even carry conviction in his own mind as to the identity of the accused, where by his testimony he expresses doubt and uncertainty— "I think so," "It is my belief, or my best judgment, but I won't swear to it," "I am not positive," "I am not certain"— how can a jury, when there is no other evidence to connect the accused with the commission of the offense, be permitted to say, against positive and direct evidence that he was not the person, that they have an abiding conviction to a moral certainty that he was the perpetrator of the offense?

Portions of the testimony of the grocer were somewhat positive that the voice he heard in the tent was that of the defendant, other portions that he was not certain, and that he would not swear that it was the defendant. But the weakness, or insufficiency of the testimony does not lie alone in that. Here, the witness, though he testified that he could tell whose voice he heard, and that it was the defendant's voice, yet was not shown to have previously talked with him or heard him talk; nor was it shown that he had any previous knowledge whatever of, or was familiar with, the defendant's voice; or that the voice he heard had any peculiarity, or was in any particular different from the voice of others. Nor was the witness in any respect required to show anything upon which his belief, or judgment, or opinion, was based, except the bare statement that he knew the

defendant, but how well or how long, or under what circumstances or conditions was not shown. But let it be conceded the witness showed sufficient qualifications to permit him to express his belief or opinion as to whose voice he·heard—he having testified that he could .tell—a question upon which we express no opinion, for no objection was made and no error is assigned with respect to it, and that the evidence was admissible and properly received, nevertheless, we cannot yield assent that such evidence alone is sufficient to connect the defendant with the commission of the offense, especially as against positive and direct evidence that he was not the person who committed the offense.

The Attorney General, in a way conceding that the evidence in such particular is not as convincing as he would like to urge an affirmance of the judgment, nevertheless contends that the proposition involves mere weight of the evidence, which was wholly for the jury. Of course in **3** this, as in many other jurisdictions, the jury are the judges of the facts, the weight of the evidence, and the cred·ibility of the witnesses. But that does not mean that the jury are permitted to find a fact without some substantial evidence to support it. Evidence which tends to prove a fact in issue, however slight that tendency may be, of course, is admissible. But whether it alone, or when considered with all the evidence in the case and in the light most favorable to the party adducing it, is sufficient to justify a finding as to such fact, is a question for the court, not the jury. We recognize that in the nature of things the law cannot and does not provide rules or devise standards to determine the quality or amount of evidence necessary to establish a fact or to satisfy the mind and induce belief as to its existence. Undoubtedly much must be left to the unprejudiced consideration of the jury. But their province in such respect is not unrestricted or unlimited. Because evidence relevant to or bearing upon some fact in issue, and hence admissible though however slight its tendency may be to prove it, has been received does not authorize a jury, on the theory that they are the sole

judges of its sufficiency to induce belief and to establish a
fact to give such effect to it, when within the range of reason-
able probabilities, inferences, or deductions, such a finding
cannot justifiably be made. We know in some texts and cases
it has been somewhat loosely stated, both as to criminal and
civil cases, that competency and admissibility of evidence is
for the court; *its sufficiency* to establish a fact in issue for
the jury. But in nearly all such instances "sufficiency" is
spoken of or treated as being synonymous with "weight of the
evidence." To say that the jury are the sole judges of the
sufficiency of evidence to establish a fact in issue is but to
say that they are the sole judges of the sufficiency of the ev-
idence to support a verdict. When it is said the jury are the
sole judges of the facts, the weight of the evidence, or as has
sometimes been said, its sufficiency to establish the fact or
facts in issue, that of course means with respect to a case
which is properly submitted to them, a case involving a con-
flict in the evidence, or evidence open to different inferences
or deductions within the range of reasonable probabilities, a
case where reasonable and unprejudiced minds upon the evi-
dence may fairly differ and draw different conclusions as to
the ultimate facts. But in every case, before its submission
to the jury, there is always a preliminary question of law for
the court whether there is sufficient evidence upon which the
jury may properly proceed to find a verdict. There is hence
nothing to the conclusion that since admissible evidence bear-
ing on or relevant to identity was adduced and received, and
inasmuch as the jury are the sole judges of the facts, the
weight of the evidence, and the credibility of the witnesses,
the question of sufficiency to establish the fact of identity was
for the jury. For the court was called upon to determine, as a
preliminary question of law, whether there was sufficient evi-
dence to justify a finding that the defendant was the perpe-
trator of the offense. Had it been shown that the witness had
previous knowledge of the defendant's voice, and for that
reason, or because of some peculiarity of the voice, was able
to tell the defendant's voice when he heard it, or had he
shown such associations or acquaintances with the defendant

as to fairly presume he had such ability, and then had been able to testify with a reasonable degree of positiveness and certainty that the voice he heard was the defendant's voice, the sufficiency of the evidence as to identity might be conceded. But nothing of the kind was shown.

Furthermore, the testimony of the witness, when looked at as a whole, the cross-examination with the direct examination, renders the testimony uncertain, doubtful, and open to conjecture or surmise as to whether the voice he heard was the defendant's voice. And as the jury had nothing more upon which to base their verdict, it follows that **4** the verdict which was rendered by them was itself based on doubtful and uncertain testimony, and upon conjecture, testimony which does not meet the required quantum of proof that the defendant, before he can be legally convicted, must be proven guilty beyond a reasonable doubt.

We think the court ought to have granted the motion to direct a verdict in the defendant's favor. The judgment is therefore reversed, and the case remanded for a new trial.

McCARTY, C. J., and FRICK, J., concur.