PEOPLE v HAYES

PEOPLE v VAUGHT

Docket No. 54607. Submitted June 1, 1982, at Grand Rapids.—Decided July 6, 1983.

Phillip R. Hayes and Stanley E. Vaught, Jr., were each charged with four counts of armed robbery, two counts of first-degree criminal sexual conduct and one count of felony-firearm. Following a jury trial in Kent Circuit Court, George R. Cook, J., each defendant was found guilty as charged. Prior to and at trial defendants sought to suppress identification testimony on the basis that the voice identification of defendants at the pretrial lineups was impermissibly suggestive and conducive to irreparable misidentification. The identification testimony was admitted at trial. Defendants moved for a new trial based on the fact that the thirteenth juror, after having been excused

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 29 Am Jur 2d, Evidence § 368.

Identification of accused by his voice. 70 ALR2d 995.

[2, 3] 21A Am Jur 2d, Criminal Law § 952.

29 Am Jur 2d, Evidence § 371.4.

Validity, under Federal Constitution, of police lineup or showup procedures—Supreme Court cases. 34 L Ed 2d 839.

Admissibility of evidence of lineup identification as affected by allegedly suggestive lineup procedures. 39 ALR3d 487.

Requiring subject or defendant in criminal case to demonstrate voice for purposes of identification. 24 ALR3d 1261.

[4] 58 Am Jur 2d, New Trial § 212.

[5] 5 Am Jur 2d, Appeal and Error § 889.

75 Am Jur 2d, Trial § 999 et seq.

Stranger's communication with jury in federal criminal case as prejudicial. 1 L Ed 2d 1849.

Prejudicial effect, in criminal case, of communications between witnesses and jurors. 9 ALR3d 1275.

Prejudicial effect, in criminal case, of communications between court officials or attendants and jurors. 41 ALR2d 227.

[6] 21A Am Jur 2d, Criminal Law § 924.

58 Am Jur 2d, New Trial §§ 103 et seq., 200.

Absence of convicted defendant during hearing or argument of motion for new trial or in arrest of judgment. 69 ALR2d 835.

and having talked to the police and the prosecutor, was permitted to have lunch with certain other members of the jury. An evidentiary hearing on the motion for a new trial was held before R. Stuart Hoffius, J. Judge Hoffius denied the motion for a new trial, holding that absolutely nothing was said about the case during the conversations between the discharged juror and the other jurors. Defendants appeal. *Held:*

1. Voice identifications are permissible and are not likely to result in impermissible misidentifications where the witness has a basis for being familiar with the voice, there is some peculiarity in the voice and the witness is reasonably positive in the identification. The record establishes the necessary familiarity, peculiarity and positiveness of identification in the present case.

2. The absence of other persons with similar voices at the lineup did not deprive defendants of their due process right by rendering the identification procedure impermissibly suggestive.

3. The motion for a new trial was addressed to the hearing judge's discretion. The record supports the judge's conclusion that there were no conversations relating to the case.

4. While defendants had a right to be at the hearing on the motion for a new trial, their absence does not mandate reversal since there is no reasonable possibility that their absence in any way was prejudicial to their case.

Affirmed.

1. Evidence — Identification — Voice — Criminal Law.

Identification of a defendant by his voice alone requires that the identification testimony be reasonably positive and certain and that there be some reason to which the witness can attribute his ability to make the voice identification, such as familiarity with the peculiarity of the voice identified.

2. Evidence — Identification — Voice — Lineups.

The use of voice identification at a lineup is proper where the victim has a basis for familiarity with the voice of the perpetrator of the crime and there is some peculiarity in the voice; a lineup identification based upon an identification by voice is not conducive to irreparable misidentification where the victim has a basis for familiarity with the voice of her assaulter, there is a peculiarity to the voice and the victim is positive in her identification.

3. Evidence — Identification — Voice — Lineups.

The absence of other persons in a lineup based in part on a voice

identification with voice pecularities similar to the defendant's does not render the lineup impermissibly suggestive, since the peculiarity itself when coupled with a basis by the victim for familiarity with the voice and a positive identification on the basis of the voice renders slight the possibility of irreparable misidentification.

4. MOTIONS AND ORDERS — NEW TRIAL.
   Rulings on a motion for new trial are addressed to the discretion of the trial court.

5. TRIAL — JURY.
   Reversal is not mandated on the basis of contact between jurors and a nonjuror during deliberations where, following an evidentiary hearing, a trial judge determines that there was no discussion of the case at bar during the period of contact between the jurors and the nonjuror.

6. TRIAL — NEW TRIAL — JURY.
   A hearing on a motion for new trial based on undue influence of the jury is a critical stage of trial at which defendant has the right to be present; however, the absence of a defendant at such a hearing does not mandate reversal where there is no indication that the defendant had any knowledge of the situation at issue and there is no reasonable possibility that the defendant's absence from the hearing resulted in prejudice to the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *David H. Sawyer,* Prosecuting Attorney, and *Carol S. Irons,* Chief Appellate Attorney, for the people.

*George S. Buth,* for defendants.

Before: R. B. BURNS, P.J., and MACKENZIE and L. C. ROOT,* JJ.

L. C. ROOT, J. Both defendants were charged with four counts of armed robbery, MCL 750.529; MSA 28.797, two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(c); MSA

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

28.788(2)(1)(c), and one count of felony-firearm, MCL 750.227b; MSA 28.424(2). Following a jury trial both defendants were found guilty as charged under all counts and appeal here as of right.

These prosecutions arose from the armed robbery of four women and the rape of two of them on the night of December 29, 1977. The assailants wore ski masks and were armed with a knife and a gun. They spent approximately six hours in the women's home before tying them up and leaving.

The Kent County Sheriff's Department conducted a lineup on January 29, 1979, which contained defendant Hayes, and a lineup on April 2, 1979, which contained defendant Vaught. Defendants and other lineup participants were asked to repeat statements supplied by the complainants, statements allegedly spoken by the perpetrators on the night of December 29, 1977. Defendants' first claim of error is that the identification evidence produced from these lineups should have been excluded from trial, as the lineups were impermissibly suggestive and conducive to irreparable misidentification such that defendants were denied due process of law. *Stovall v Denno,* 388 US 293, 301-302; 87 S Ct 1967; 18 L Ed 2d 1199 (1967); *People v Anderson,* 389 Mich 155, 169; 205 NW2d 461 (1973); *People v Prast (On Rehearing),* 114 Mich App 469, 485-486; 319 NW2d 627 (1982).

The prosecution contends that this issue has not been preserved for appeal because defendants did not object to the identification evidence when it was offered. We note, however, the following exchange at trial:

"*A. [Complainant Mary Rus]:* Yeah, I was called to—I was subpoenaed on and off a lot, and I was called to three line-ups.
"*Q. [Prosecutor]:* Before—

*"Mr. Rominger [Hayes's attorney] (interposing):* Excuse me, your Honor. At this time I would like to register for the record the objection that has been filed pursuant to motion and argued by this court at this time. Thank you, your Honor.

*"The Court:* The record may so reflect."

The lower court record contains no transcript of the motion nor is there any indication as to its disposition. The trial court did consider the issue on defendants' application for a mistrial, and we will treat it as preserved for appeal.

A pre-eminent Michigan case in the law of voice identification is *People v Bozzi,* 36 Mich App 15; 193 NW2d 373 (1971), *lv den* 386 Mich 775 (1971). There, this Court noted the language of *State v Karas,* 43 Utah 506; 136 P 788 (1913):

" 'Undoubtedly voice is a competent means of identification, and one by such means alone may be sufficiently identified. In some instances identification by such means may be as ponderous as identification by sight. But the testimony should be reasonably positive and certain, and based upon some peculiarity of the person's voice, or upon sufficient previous knowledge by the witness of the person's voice.' " 36 Mich App 19.

After considering several other cases from outside the State of Michigan, the *Bozzi* Court concluded that certainty must be shown to exist in the mind of the identifying witness by testimony that is positive and unequivocal. Further, some reason must appear to which the witness can attribute the ability to make the voice identification, of which familiarity and peculiarity are the most common, though not exclusive, examples. *People v Bozzi, supra,* p 22.

In the case at bar, complainant Sue Venema was positive of her identification of defendant Vaught.

Venema testified that Vaught's voice was "within the average range, but low". Venema stated that defendant Hayes's voice was lower and raspy. Complainant Mary Rus testified that Hayes's voice was "real raspy". "It was like sandpaper." Rus also identified Vaught by certain facial characteristics. It should be noted that during the criminal episode she had seen him without his mask. Complainant Carmen Assink was positive of her identification of defendant Hayes. She indicated that Hayes has an unusually low, rather nasal voice. According to Assink, she had a lengthy conversation with this man after he sexually assaulted her. Hayes was not wearing his ski mask at this time, giving Assink an opportunity to view his general facial features. Significantly, the series of criminal events occurred over a six-hour period.

We find that the testimony of these complainants more than adequately meets the test of *People v Bozzi, supra.* Both defendants were identified by "positive and unequivocal" testimony from two complainants: Hayes by Rus and Assink, Vaught by Rus and Venema. Assink had an opportunity to become familiar with Hayes's voice. Compare *Roper v Beto,* 454 F2d 499 (CA 5, 1972), where the complainant listened to the defendant talk to her for about 35 minutes following the sexual assault, and *State v Johnson,* 138 NJ Super 579; 351 A2d 787 (1976), where the defendant maintained a running conversation with the complainant before, during, and after her rape. Both defendants here were identified in part by distinctive vocal peculiarities. Defendants now complain, however, that these very peculiarities gave rise to a suggestive lineup. They would have this Court require that police officers screen lineup participants for a voice similarity; *i.e.,* lineup participants accompanying a

suspect like Hayes must have raspy, rather nasal voices.

We find that, aside from the potential insurmountable burden it would place on the lineup procedure, such a requirement is not mandated by concerns for due process of law. We have previously noted that physical differences between the suspect and other lineup participants do not, in and of themselves, constitute impermissible suggestiveness. *People v Barnes,* 107 Mich App 386; 310 NW2d 5 (1981); *People v Richmond,* 84 Mich App 178, 181; 269 NW2d 521 (1978). We believe that the chance of "irreparable misidentification" is slight where witness testimony meets the requirements of *People v Bozzi, supra.* Accordingly, we find no error in admission of the identification testimony in this case.

A second issue was raised in defendants' motion for a new trial. It came to light that the thirteenth juror, after the jury had commenced deliberations, had lunched with five other jurors after having been excused from consideration of the case. An evidentiary hearing was held pursuant to this motion, Judge R. Stuart Hoffius presiding, at which the trial judge and several jurors gave testimony. The facts surrounding the alleged impropriety, as gleaned from the testimony, were ably summarized by Judge Hoffius in rendering his decision on the record:

"The testimony that I have heard here indicates that because the jury had been sitting together for two weeks, that they had become friendly with each other; and that the jury case went to the jury at approximately 10:15 or 10:30 in the morning of May 1, 1980. The facts further reflected that the fourteenth juror had been excused for a reason not related or important

728 MICH APP 721 [July

here prior to the termination of the case, and that thirteen jurors sat throughout the case.

"Mr. Lautenschleger, one of the jurors, was excused at that time. After he was excused, he was in the judicial corridor here at the Hall of Justice and visited with the Prosecuting Attorney, both defense counsel, Mr. Rominger and Mr. Mirque, and with Officer David Benison. He was furnished information of other facts that the police knew at the time and the prosecutor's office knew at the time. And he says he believes he saw some newspaper clippings at the time.

"In any event, when the jury was about to recess for the noon lunch period, he was standing in the corridor and talked to Judge Cook or in Judge Cook's secretary's office, and asked if he might go to lunch with the jury. It is the testimony of Judge Cook that Mr. Rominger was present and Officer Benison was present, but that Mr. Mirque was not present. He was not sure whether his clerk was there. It is his claim that he permitted Mr. Lautenschleger to go to lunch but advised him very carefully that he was not to communicate in any way with the jury about any facts of the case.

"As a result, Mr. Lautenschleger went to lunch at Churchill's restaurant, which is approximately a block and a half from the Hall of Justice, and had lunch there with five other jurors. The testimony further has shown—and, I have heard the testimony of three of those jurors, namely, Tamara Reerig, Joseph Olejniczak, and Rena Korsky. The two other jurors were not available at the time because of a communication problem. And they had called the number that has the recording as to when persons are to appear, and they gathered from the recording that they were not to appear at that time. But both have been interviewed by telephone. Teddi Janks was interviewed, I believe, by Mr. Mirque. And that has been summarized here on the record. And Mr. Eric Zernis, the other juror who had lunch with Mr. Lautenschleger, was also contacted by Mr. Hoekstra. And a summary of his conversation has been put on the record.

"It is very clear from the statements made and the testimony taken that absolutely nothing was said about the case during the lunch hour. Mr. Lautenschleger

walked to the restaurant with these five jurors who were still sitting on the case. They talked, apparently, about 90 percent of the time, according to one of them, about two of the jurors' experiences as immigrants from Latvia. And no communication of any kind either by gesture, wink, eye, or any other manner, was made relative to the case."

Noting that Michigan case law required an affirmative showing of prejudice to defendants, and finding that no such prejudice had been shown, Judge Hoffius denied defendants' motion.

Rulings on a motion for a new trial are entrusted to the discretion of the trial court. *People v Kaigler,* 81 Mich App 340, 346; 265 NW2d 324 (1978). It is well established that reversible error will not be presumed merely because a juror is exposed to prejudicial remarks made by a stranger or a bypasser. In *People v Nick,* 360 Mich 219; 103 NW2d 435 (1960), the defendant moved for a mistrial on the ground that the jury had been allowed to separate, presenting opportunities for contact with non-jurors, and that two jurors were present in the corridor during recess when an unidentified woman made a remark concerning the guilt of the defendant. The *Nick* Court stated:

"Prejudice must be shown, or facts clearly establishing the inference that it occurred from what was said or done. A mere possibility is not sufficient." 360 Mich 227.

Similarly, the Court in *People v Schram,* 378 Mich 145; 142 NW2d 662 (1966), refused to overturn the defendant's conviction where two jurors had engaged in a brief conversation with a prosecutor prior to deliberations and careful investigation by the judge revealed that this conversation had no relevance to the proofs. See also *People v*

*Hoag,* 113 Mich App 789, 799-800; 318 NW2d 579 (1982); *People v Dean,* 103 Mich App 1, 3-5; 302 NW2d 317 (1981).

Here the trial court found no evidence that the thirteenth juror, Lautenschleger, and the jurors discussed the case over lunch. We decline defendants' invitation to ignore the rule articulated in *People v Nick, supra.* Coincidentally, however, we are compelled to issue a note of caution to trial judges who may find themselves in similar situations: to permit contact between jurors and non-jurors prior to or during deliberations is to court disaster.

Finally, defendants assert that their absence from post-trial proceedings on the alleged juror misconduct caused reversible error. A hearing on the issue of undue influence of a juror is a critical stage of the trial at which defendant has a right to be present. *People v Medcoff,* 344 Mich 108, 117; 73 NW2d 537 (1955). The *Medcoff* Court had held that, where this right is denied, injury is presumed and a defendant is not required to show that he was prejudiced by being excluded from the hearing. This is no longer the law.

The United States Supreme Court has recognized that even the violations of constitutional rights can amount to harmless error in the circumstances of a particular case. See *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). In cases involving a defendant's absence from a part of a trial, that Court has indicated that automatic reversal is not the rule. See *Illinois v Allen,* 397 US 337; 90 S Ct 1057; 25 L Ed 2d 353 (1970).

In the wake of these decisions, the Michigan Supreme Court abandoned the rule of *People v Medcoff:*

"In its place we adopt the following language from *Wade v United States*, 142 US App DC 356, 360; 441 F2d 1046, 1050 (1971), as the proper test for determining whether a defendant's absence from a part of a trial requires reversal of his or her conviction:

" 'It is possible that defendant's absence made no difference in the result reached. The standard by which to determine whether reversible error occurred [is] * * * whether there is "any reasonable possibility of prejudice".' " *People v Morgan,* 400 Mich 527, 536; 255 NW2d 603 (1977), *cert den* 434 US 967; 98 S Ct 511; 54 L Ed 2d 454 (1977).

In this case, Judge Hoffius conducted a thorough inquiry into the allegations of juror misconduct and found that "absolutely nothing was said about the case during the lunch hour". There is no indication that either defendant had any knowledge of the incident beyond that possessed by their attorneys. We find no reasonable possibility that defendants were prejudiced by their absence from this hearing. Because of our disposition of this question, we need not reach the issue of whether defendants' presence was effectively waived by their attorneys. See, *e.g., People v Hurd,* 102 Mich App 424, 428; 301 NW2d 881 (1980).

Affirmed.