*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 21, 2020

Plaintiff-Appellee,

v

No. 344806
Ionia Circuit Court
LC No. 2017-017320-FH

TIMOTHY KRZEMINSKI,

Defendant-Appellant.

Before: O'BRIEN, P.J., and GADOLA and REDFORD, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of fourth-degree fleeing and eluding, MCL 257.602a(2); reckless driving, MCL 257.626; malicious destruction of grass, MCL 750.382(1)(a); and operating while license suspended or revoked, MCL 257.904(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 5 to 15 years' imprisonment for fourth-degree fleeing and eluding; 93 days in jail for reckless driving; 93 days in jail for malicious destruction of property; and 93 days in jail for operating while license suspended/revoked. We affirm defendant's convictions and sentence, but remand for the trial court to resolve defendant's claims of inaccuracies in his PSIR.

## I. FACTS

Defendant's ex-fiancée, Patricia Carrizales, testified that on October 30, 2017, defendant called her "at least" six times on her cell phone asking to come over. Carrizales recognized defendant's voice and told him that she did not want him to come over. At about 6:00 p.m., Carrizales heard a knock on her front door. She looked out the window of her home and saw an older, teal-blue Mazda truck in her driveway that she knew belonged to defendant's mother. Carrizales then heard defendant's voice asking to come inside. Carrizales did not allow defendant into her home, and she afterwards saw the truck go on to grass next to her driveway and start "doing donuts and tearing up the grass." Carrizales called 911, and the truck left.

Michigan State Trooper James Hutchinson testified that he responded to Carrizales' call and investigated the incident. After speaking with Carrizales, Trooper Hutchinson drove to the home of defendant's mother to look for defendant. Defendant's parents said that defendant was

-1-

not at their home, and Trooper Hutchinson did not see the truck on their property. The trooper went down the road "[r]oughly a quarter of a mile to a half a mile" from defendant's parent's home to wait for defendant to possibly return to the area. At 8:44 p.m., Trooper Hutchinson saw the truck described by Carrizales, driven by a "white male, roughly in his 40's and 50's"—which matched the description of defendant given by Carrizales—pull into the intersection. There was no one else in the truck. The trooper could not say for sure that defendant was the driver, but he believed that it was.

Trooper Hutchinson pulled behind the truck, activated his emergency lights, and attempted to conduct a traffic stop. The driver, however, continued to travel down the roadway without stopping. Trooper Hutchinson activated his sirens, but the truck still did not stop. The truck turned into the property belonging to defendant's parents and accelerated down the driveway into the back of the property. Trooper Hutchinson did not continue pursuing the vehicle because it would have been against departmental policy.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution failed to present sufficient evidence to support his convictions because the evidence was insufficient to identify him as the perpetrator. We disagree.

This Court reviews de novo a defendant's challenge to the sufficiency of the evidence. *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001). To determine whether the prosecution presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Gonzalez*, 468 Mich 636, 640–41; 664 NW2d 159 (2003) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising from the evidence can sufficiently prove the elements of a crime." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. *People v Murphy*, 321 Mich App 355, 359; 910 NW2d 374 (2017).

Defendant does not argue that any element of the crimes he was convicted of were not proven beyond a reasonable doubt; he only argues that the evidence was insufficient to identify him as the perpetrator of those crimes. "Identity is always an essential element of every crime." *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018).

Viewing the evidence in the light most favorable to the prosecution, a jury could reasonably infer from the circumstantial evidence that defendant was the perpetrator of all the crimes for which he was convicted. Defendant's ex-fiancée, Carrizales, had known defendant for 16 years and was engaged to be married to him. She testified that she received several phone calls from his cell phone number, which she had saved in her phone, and that she recognized his voice when she answered his calls. During the calls, defendant repeatedly asked to come over, but Carrizales said no. Someone later drove a truck that matched the description of defendant's

mother's truck into Carrizales' driveway. She then heard a knock on the door and recognized defendant's voice asking to come in. "Undoubtedly voice is a competent means of identification, and one by such means alone may be sufficiently identified." *People v Hayes*, 126 Mich App 721, 725; 337 NW2d 905 (1983) (quotation marks and citation omitted). Thus, this evidence was sufficient to establish that it was defendant knocking at Carrizales' door. When Carrizales refused to let defendant in, he got into the truck and started "doing donuts" in Carrizales' yard. She then called the police, and he left.

Trooper Hutchinson interviewed Carrizales and, based on what she said, looked for defendant at his parents' home. Defendant's parents told Trooper Hutchinson that defendant was not home, but the trooper could not locate defendant's mother's truck on defendant's parents' property. So the trooper waited a short distance from defendant's parents' home to see if defendant returned. When the trooper saw a truck matching the description of defendant's mother's truck given by Carrizales, which was being driven by a man matching Carrizales' description of defendant, the trooper attempted to pull the truck over. The driver ignored the trooper and fled onto the property owned by defendant's parents. The trooper later saw a photograph of defendant and testified that the photograph matched the man that he saw driving the truck.

From this, a rational juror could draw reasonable inferences to find beyond a reasonable doubt that defendant was the driver of the truck that fled from Trooper Hutchinson. This includes (1) Carrizales' testimony that defendant was driving a truck that looked like his mother's truck, (2) Trooper Hutchinson's testimony that he did not see defendant's mother's truck at defendant's parent's house when he talked to defendant's parents, (3) Trooper Hutchinson's testimony that he saw someone that matched the description of defendant driving a truck that looked like defendant's mother's truck, and (4) Trooper Hutchinson's testimony that when he tried to pull over that truck, it fled, eventually turning into defendant's parent's driveway to get away. Defendant's argument that there was insufficient evidence to support that he was the perpetrator of the crimes does not warrant appellate relief.

### III. INVADING THE PROVINCE OF THE JURY

Defendant argues that the trial court erred by allowing Trooper Hutchinson to testify about why he believed defendant was driving the truck that the trooper attempted to pull over because that testimony invaded the province of the jury. We disagree.

A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). An abuse of discretion occurs when the court chooses an outcome that falls outside the range of principled outcomes. *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014).

During trial, the prosecution asked Trooper Hutchinson why he believed that the driver of the truck was defendant. Trooper Hutchinson gave the following answer:

Through my investigation [Carrizales] has, over at the time, 15 years of knowledge of [defendant]. She knows his voice. He's repeatedly asked to go to her house that evening. He showed up at her house yelling through the windows.

She could recognize his voice. She saw the vehicle that was out there. She knew it belonged to his mother. . . . I had his date of birth. I knew he was white. At the time I did not see a photo of him. After the incident I was able to retrieve a photo, and the subject appeared to be similar. I was within a few—less than a mile of his parent's house from the incident where I believe he was not home at the time of my first approach to the house.

Under MRE 701:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

But "where the jury is as capable as anyone else of reaching a conclusion on certain facts, it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury." *People v Perkins*, 314 Mich App 140, 161-162; 885 NW2d 900 (2016) (quotation marks and citation omitted).

Trooper Hutchinson's testimony did not invade the province of the jury. He testified that he believed that it was defendant driving the truck, and he explained why he had that belief— circumstantial evidence pointed to defendant as the driver, and the trooper's perception of who he saw driving the car supported that conclusion. This testimony was entirely proper under MRE 701.[1] Trooper Hutchinson was not expressing an opinion on defendant's guilt or innocence, see *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013), nor was he commenting on evidence that the jury could draw its own conclusions about, such as a picture or surveillance video, compare *Perkins*, 314 Mich App at 161-162. He was instead giving testimony to help the jury understand why he inferred that defendant was the driver of the truck that he tried to pull over. The jury was not capable of knowing why Trooper Hutchinson believed what he did; only Trooper Hutchinson's testimony could have clarified that. Thus, Trooper Hutchinson's testimony did not invade the province of the jury.

## IV. DEPARTURE SENTENCE

Defendant's recommended sentencing-guidelines' range for his fleeing-and-eluding conviction was 5 to 46 months' imprisonment. The trial court departed from the guidelines' range and sentenced defendant to 60 months (5 years) to 15 years' imprisonment. Defendant argues that this sentence was unreasonable and disproportionate. We disagree.

---

[1] Defendant states on appeal that "[t]he reasons cited by the trooper were not based on personal knowledge since the officer could not identify [defendant] as the driver of the vehicle." We fail to see how things that Trooper Hutchinson learned from interviewing Carrizales and things that he saw are not "based on personal knowledge."

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). The relevant question when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality. *People v Steanhouse*, 500 Mich 453, 472; 902 NW2d 327 (2017). Under the principle of proportionality, the key test is whether the sentence is proportionate to the nature of the offense and the background of the offender. *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017).

Although a court must score and consider the sentencing guidelines, the guidelines are advisory only. See *Lockridge*, 498 Mich at 365. Though the sentencing guidelines generally encompass the principle of proportionality, a trial court reasonably departs from the guidelines if a departure sentence would be more proportionate to the nature of the offense or the background of the offender. See *Dixon-Bey*, 321 Mich App at 524-525. Relevant factors for determining whether a departure sentence is more proportionate include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, (3) factors considered by the guidelines but given inadequate weight, (4) a defendant's conduct while in custody, and (5) a defendant's potential for rehabilitation. *Id*. at 525, 525 n 9.

Defendant contends that his departure sentence was unreasonable because the trial court considered factors already taken into account by the sentencing guidelines. We disagree.

When sentencing defendant, the trial court stated that the Michigan Department of Corrections' recommended 12-month jail sentence was "wholly inappropriate" because defendant had 10 prior felonies, 12 prior misdemeanors, and 9 prior drinking-and-driving convictions. Defendant argues that his prior convictions were already considered by PRV 1, 2, and 5. Defendant ignores, however, that only five of defendant's felony convictions were taken into consideration when scoring PRV 1 and PRV 2, and only seven of defendant's misdemeanor convictions were considered in PRV 5. Thus, defendant's criminal history provided a proper basis for departure because it was given inadequate weight by the guidelines. See *id*. at 525.

The trial court also noted that "prison is the place that society sends people that society can't handle" and that the function of the court, above all others, is to "protect society." The trial court said that defendant "demonstrated over and over and over" that he was a person that should not be a part of society because society "can't handle" defendant. It further noted that defendant's "criminal history is replete with violations while on supervision" and while in prison. The trial court said that the best that the court was able to offer defendant did not work for him and it did not prevent him from endangering society, as demonstrated by the fact that the current offenses occurred while defendant was on bond "for yet another operating while intoxicated" conviction. In short, the trial court reasoned that defendant was unable to follow the rules whether in or out of custody, and that, based on defendant's recidivism, his potential for rehabilitation was extremely low. These were proper reasons for the trial court to depart from the sentencing guidelines. See *id*. at 525 n 9.

The trial court went on to point out that many of defendant's convictions came from crimes committed while driving. The court reasoned that defendant's driving put the public at risk, as defendant demonstrated "time and time again by injuring people as a result of [his]

driving while under the influence, by doing things while out on bond." The court found that the current conviction was a "great example" because he fled from the police in his car while out on bond for driving while intoxicated. The court found that the only way to "ensure" that defendant does not "kill some innocent person" or a loved one, all of whom are subject to the danger that defendant presented because he "simply [does not] stop driving," was to imprison him. The guidelines do not take into account a defendant's propensity to continue committing a certain type of offense despite numerous attempts at rehabilitation, nor do they take into account the increased danger to society posed by a defendant who refuses, despite numerous efforts, to consider the danger to the public he is creating by continually committing driving-related offenses. Thus, this reasoning by the trial court also supported a departure sentence.

In sum, the trial court's reasoning more than adequately supported its 14-month departure from the guidelines, and the trial court did not abuse its discretion by concluding that defendant's sentence of 5 to 15 years' imprisonment was proportionate to defendant's offense and background. Thus, defendant's sentence was reasonable, and he is not entitled to resentencing.

## V. STANDARD 4 BRIEF

In his Standard 4 Brief filed pursuant to Supreme Court Administrative Order 2004-6, Standard 4, defendant argues that he is entitled to resentencing because the trial court failed to correct inaccuracies in the PSIR and sentenced him based on those inaccuracies. We disagree that defendant is entitled to resentencing, but conclude that the trial court must resolve defendant's challenges to his PSIR.

We review for an abuse of discretion a trial court's response to a claim of inaccuracy in a PSIR. *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008). If a sentencing court fails to resolve a challenge, this Court will remand for clarification unless the failure constituted harmless error. *People v Daniels*, 192 Mich App 658, 675; 482 NW2d 176 (1991).

The Legislature requires the Department of Corrections to prepare a written PSIR to aid the trial court in tailoring a defendant's sentence in felony cases. See MCL 771.14(1); MCR 6.425(A); *People v Miles*, 454 Mich 90, 97; 559 NW2d 299 (1997) (stating that PSIRs are "integral to sentencing" and "are intended to insure that the punishment is tailored not only to the offense, but also the offender"). At sentencing, either party may challenge the accuracy or relevancy of any information contained in the PSIR. MCL 771.14(6); MCR 6.425(E)(1)(b); *People v Lloyd*, 284 Mich App 703, 705; 774 NW2d 347 (2009). The information is presumed to be accurate, and the defendant has the burden of going forward with an effective challenge. See *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997). However, once the defendant challenges the factual accuracy of information in the PSIR, the sentencing court has a duty to resolve the challenge, and the prosecutor bears the burden of proving the fact by a preponderance of the evidence. See *Lloyd*, 284 Mich App at 705. The trial court must allow the parties to be heard and must make a finding as to the challenge, or determine that the finding is unnecessary because the court will not consider it during sentencing. MCR 6.425(E)(2); *People v Waclawski*, 286 Mich App 634, 689-690; 780 NW2d 321 (2009).

Because the Department of Corrections makes critical decisions concerning a defendant's status on the basis of information contained in the PSIR, the PSIR should accurately reflect any determination the sentencing judge has made about the accuracy or relevance of its information. *Uphaus (On Remand)*, 278 Mich App at 182. Thus, if the trial court finds that challenged information is inaccurate or irrelevant, that finding must be made part of the PSIR and the information must be corrected or stricken from the PSIR. MCL 771.14(6); MCR 6.425(E)(2)(a); *Lloyd*, 284 Mich App at 705. When a sentencing court disregards information challenged as inaccurate, the court effectively determines that the information is irrelevant and the defendant is entitled to have the information stricken from the PSIR. *Waclawski*, 286 Mich App at 690; *People v Thompson*, 189 Mich App 85, 88; 472 NW2d 11 (1991). The failure to strike, however, can be harmless error. *Waclawski*, 286 Mich App at 690.

The record reveals that defendant objected to several statements in his PSIR. At sentencing, the trial court allowed defendant the opportunity to be heard, but it did not decide whether to correct or strike the disputed information. See *id*. at 689-690. Instead, the trial court simply noted defendant's disputes in the PSIR. The trial court based its sentence on defendant's history of, and continuation of committing, driving-related offenses that endangered the public, as explained earlier. None of defendant's factual disputes undermine this reasoning for the trial court's sentence. Defendant raised two objections to references to drug use in his PSIR, but the trial court never referenced defendant's drug use as a reason for its sentence. Defendant also objected to mention in the PSIR that he served six sentences when he only served five, but that also did not factor into the trial court's reasoning, which was based on defendant's undisputed number of prior convictions. Defendant also objected to reference in the PSIR that defendant "has the propensity to run from the police both while intoxicated and sober," but the trial court found that this was illuminated by defendant's criminal history. Lastly, defendant objected to the agent's description of the offense, but the trial court found that the description mirrored the testimony elicited at trial. In sum, none of defendant's objections undermine the trial court's reasoning for its sentence, so we hold that the failure to resolve the challenges was harmless error. See *Daniels*, 192 Mich App at 675.[2]

However, defendant is entitled to an accurate PSIR for post-sentencing purposes, and the trial court failed to resolve defendant's challenges to the PSIR's alleged inaccuracies. Instead, it simply noted that defendant challenged some information as inaccurate. We therefore remand for the limited purpose of the trial court resolving the disputes of inaccuracies in the PSIR for post-sentencing purposes. See *Waclawski*, 286 Mich App at 689-690.

Affirmed in full, remanded for the limited purpose of resolving defendant's claim of inaccuracies in the PSIR.

---

[2] Defendant raised one other objection at sentencing. He asserted that the PSIR's discussion of his mental health was not accurate because he never had and was never treated for a dual-diagnosis of mental illness and substance abuse. The trial court never considered defendant's mental health when sentencing defendant, so the trial court's failure to strike this was harmless error as well.

/s/ Colleen A. O'Brien
/s/ Michael F. Gadola
/s/ James Robert Redford